WESTERN DIST.
*Sept.* 1857.

FOSTER'S HEIRS
*vs.*
FOSTER'S ADMX.
ET AL.

11L 401
48 1164

11 401
109 922

FOSTER'S HEIRS *vs.* FOSTER'S ADMINISTRATRIX ET AL.

APPEAL FROM THE COURT OF THE FIFTH JUDICIAL DISTRICT, FOR THE PARISH OF ST. MARY, THE JUDGE THEREOF PRESIDING.

Where sales of certain slaves are made by public act, in due form of law, having the appearance of verity and good faith on the face of them, and the vendee afterwards mortgages these slaves to a creditor, who is ignorant of the fraud practised by the vendee upon his vendor, in acquiring them, the mortgagee's right will not be affected by the fraud between the original parties.

A *bonâ fide* purchaser, ignorant of the nature of the sale to his vendor, cannot be affected by any fraud between the original parties: So, a mortgage being in the nature of an alienation, the mortgage creditor, who had no knowledge of the *fraud* between the mortgagor and his vendor, in acquiring the mortgaged property, will not be prejudiced by it.

This is an action of revendication and rescission of the sales of certain slaves, on account of fraud in the vendee.

The plaintiffs are the children of Thomas Foster, deceased, joined and assisted by their mother as tutrix, and her husband

WESTERN DIST.
Sept. 1837.

FOSTER'S HEIRS
vs.
FOSTER'S ADMX.
ET AL.

as co-tutor. They allege that Thomas Foster, a short time before his death, sold and conveyed to his brother, Levi Foster, eighteen or nineteen slaves, by notarial act bearing date the 5th and 13th May, 1830, which sales they expressly charge to be fraudulent, null and void, having been procured by fraud and circumvention on the part of Levi Foster from Thomas Foster, when the latter was, by habitual intoxication and extreme debility, incapable of managing his affairs, and without any real or *bonâ fide* consideration.

They further allege, that said sales and transfer of the slaves in question were made in fraud, and to defraud the widow of her rights to one half of the community, and the minor children of their rights in the inheritance of the community of acquests and gains.

They further state, that after the death of their ancestor, which happened soon after the passing of said sales in 1830, Levi Foster took possession of his papers, books, and all his remaining effects, without making an inventory, or ever accounting for, or explaining the affairs of Thomas Foster's succession; and that in 1831 he applied to the judge of probates, and had himself appointed tutor of the minor children of said Thomas Foster, all of which is contrary to law.

They further show that Levi Foster is dead, leaving a widow and four children, who is tutrix of the minor children, administratrix of his estate, and has taken into her possession the said slaves and other property.

The plaintiffs further allege, that said acts of sale ought to be annulled as fraudulent, because they are donations *inter vivos*, made gratuitously and without consideration; that they are illegal, being of immovables of the community of acquests and gains, and not made for the establishing of the children of Thomas Foster, but on the contrary, to deprive them of their inheritance as forced heirs; that they are null and void as acts of donation, not being made and accepted in the manner prescribed by law, but on the contrary, disguised in the form of onerous contracts; they are null for the portion to which the widow is entitled as a partner in the

WESTERN DIST.
*Sept.* 1837.

FOSTER'S HEIRS
*vs.*
FOSTER'S ADMX.
ET AL.

community, even if valid as donations, and must be reduced to the disposable portion, both as respects her and the forced heirs.

They pray that the acts of sale be annulled, and declared fraudulent and void, and that said slaves be decreed their property, and delivered up accordingly.

The defendant denied all fraud, and averred that said sales are valid, being made *bonâ fide;* that the slaves in question belong to the succession of her deceased husband, which she administers; she avers that the plaintiffs, having succeeded to all the rights of Thomas Foster, are legally bound by his acts, and they cannot attack the sales as fraudulent, or allege and prove fraud any more than Thomas Foster could, were he living. She prays that the plaintiffs' demand be rejected.

Hillyer and Robbins intervened, and claimed to be mortgage creditors of Levi Foster, having a mortgage on some of the slaves in question, executed after the sales from Thomas Foster to his brother.

They allege, that their rights will be materially affected by the plaintiffs' demand, and ask to join the defendant in supporting said sales. They deny all fraud on the part of Levi Foster, and pray that the plaintiffs' claim be rejected, and for general relief.

The plaintiffs, in answer to the petition of intervention, aver that the mortgage cannot affect the property in question, because Levi Foster could not legally mortgage property which did not belong to him; and further, that the debt attempted to be secured by this mortgage, was contracted by Wm. A. Seay & Co., long before the acts of sale were passed, and was not therefore a new obligation contracted on the faith of said sales.

Upon these pleadings and issues the case was tried by a jury.

The evidence showed, that in the spring of 1830, Levi Foster induced his brother, [Thomas Foster, to leave his family in Mississippi, and come with his slaves to the parish of St. Mary, in Louisiana, where the former resided. Although not poor, Thomas Foster's affairs in Mississippi

WESTERN DIST.
Sept. 1837.

FOSTER'S HEIRS
vs.
FOSTER'S ADMX.
ET AL.

were in some disorder; but he left enough to pay his debts, and his creditors never followed him.

He was a man of intemperate habits, being in a state of continual intoxication, and his brother availing himself of his influence over him, persuading him that his creditors were pursuing him from Mississippi, it was necessary to conceal himself, and to convey his property, for the benefit of his children, to him, who was their uncle.

Under this influence the two acts of sale were made, which purport on their face to be for a valuable consideration. The first one, dated the 5th May, 1830, states the consideration to be a note for three thousand dollars, from Thomas to Levi Foster, purporting to be executed the 15th January, 1830. The other act declares the consideration to be two thousand five hundred dollars, payable in certain promissory notes and goods, and that they were *delivered*.

It was proved, that at the period of the date of the note of three thousand dollars, from Thomas to Levi Foster, the latter was in Louisiana, and the former in Mississippi, and could not have seen each other for more than a month after its date. In relation to the second sale, M'Intosh, a witness for the plaintiffs, states, that the notes mentioned as having been given in payment by L. Foster, were put into his hands, but proved to be on insolvent persons; and after keeping them some time, Levi Foster took one of them, which, he thought, might be of some value, and told him to destroy the rest, as being of no value, and to say nothing about it. The goods mentioned in this sale as being delivered, were proved to have been sent to Texas by Levi Foster himself, and sold on his account.

The parish judge who passed these sales, states in his testimony, that Levi Foster directed him to express at the foot of the act of sale, that the goods and notes were delivered to the vendor. The judge adds, that he suspected the fairness of the transaction at the time.

There was much testimony taken, and many circumstances detailed, proving the fraud on the part of the vendee, as alleged.

Upon all the evidence adduced, the jury returned a verdict for the plaintiffs, setting forth, that as Levi Foster acquired no title to the slaves in question, he could convey none to the mortgagees and intervenors. Judgment was rendered for the plaintiffs, annulling the sales, and decreeing the slaves to the plaintiffs, and rejecting the demand of the intervenors.

The defendant and intervenors both moved for a new trial, which being refused, the intervenors alone appealed.

*Bowen* and *Crow,* for the plaintiffs.

In this case the contract of sale between Thomas and Levi Foster, is null and void ; the consent of the vendor having been unfairly obtained through fraudulent means. *Louisiana Code, article* 1772, 1813, 1841. 1 *Martin, N. S.,* 451.

2. Contracts of sale so infected with fraud as these, are utterly void *ab initio.* No title is acquired under them by the fraudulent purchaser, and he cannot transmit any to his creditors, because the rights which the creditor acquires, cannot be greater than those of the debtor. 2 *Louisiana Reports,* 81. 8 *Martin, N. S.,* 336. *Dig. liv.* 50, *title* 17, *law* 54, 143, 171. *Partida* 7, 34, 12 and 13.

3. In fraudulent sales the vendee acquires no title, but only a naked possession, where the property is delivered. Fraud renders a sale void *ab initio,* which is not translative of property from the original vendor, who may still claim it as if it had never been sold. 2 *Louisiana Reports,* 516. 3 *Ibid,* 232. *D' Wolf* vs. *Butler,* 4 *Mason,* 289.

4. There is a difference between the case of *bonâ fide* purchasers, and the creditors of a fraudulent vendee. The former are made poorer by the payment of the price ; the latter pay out nothing, and in effect, secure a debt due them from one person, with the property of another.

5. The interpleaders in this case, were creditors of Levi Foster, before this sale, for goods sold to a firm of which he was a member. By taking a mortgage on these slaves they were placed in no worse condition, and might be in a much

WESTERN DIST.  better situation ; they are not, therefore, entitled to any
Sept. 1837.   exemption on account of this fraud.

FOSTER'S HEIRS      6. Our insolvent laws protect the title of the purchaser,
vs.            on the eve of insolvency, from whom a new consideration
FOSTER'S ADMX.
ET AL.        passes, but will disregard that of one who purchases on
              account of an antecedent debt.

Lewis, for the defendants.

Simon, for the intervenors.

The intervenors are mortgage creditors of Levi Foster,
against whom fraud is alleged by the plaintiffs, to annul the
sales of certain slaves made to him by Thomas Foster. This
fraud cannot affect the intervenors, who are the bonâ fide
creditors of Levi Foster, and who contracted with him in
the full belief that he was the true owner of the slaves
mortgaged.

2. Will the fraud that is supposed to have existed and
been proven between the vendor and vendee, be sufficient to
prevent the interpleaders from recovering the amount of their
mortgage debt, and enforcing it against these slaves ? It is
believed these parties who are third persons, cannot be
affected by any fraud between the original parties. Louisiana
Code, 2236.   1 Martin, N. S., 384.   8 Ibid, 342.
6 Cranch, 133.

3. The intervenors were strangers to any fraud between
the original parties ; had no knowledge of it, and contracted
in good faith with the vendee. Suppose Thomas Foster,
instead of selling the slaves, had merely consented to mort-
gage them to secure a debt due by Levi Foster, would not the
mortgage have its effect ? Here L. Foster was in possession
of the slaves, and his title to them open and known to all.
The circumstances of fraud and simulation cannot affect the
rights of third parties acting in good faith.   6 Cranch, 133.

Carleton, J., delivered the opinion of the court.

This is an action brought by the wife and heirs of Thomas
Foster, deceased, to set aside two acts of sale, one dated 5th

WESTERN DIST.
*Sept.* 1837.
FOSTER'S HEIRS
*vs.*
FOSTER'S ADMX.
ET AL.

May, 1830, and the other the 13th of the same month and year, by which a number of slaves were sold by said Thomas Foster to Levi Foster, his brother. The petitioners aver, that the sales are null and void, having been made in fraud of their legal rights, and without consideration.

Levi Foster having died, the suit is instituted against his widow and heirs.

The defendants for answer, deny generally; repel the charge of fraud; plead the prescription of one year, and set up various other matters in defence, which it is not material to notice.

Soon after the petition was filed, Philo Hillyer and George Robbins, merchants, residing in New-York, intervened in the cause, alleging in their petition, that this action would materially affect their rights, inasmuch as they held a mortgage on several of the said slaves, as security for a debt of a considerable sum of money, due them from Levi Foster's succession; that the slaves were duly transferred to him by his brother Thomas; deny the existence of any fraud, as alleged, and pray that the plaintiffs' petition may be rejected, and for general relief.

The plaintiffs, in their answer to the petition of intervention aver, that the slaves were not the property of Levi Foster, and that he had no right, therefore, to mortgage them; that the debt for which the mortgage was given, was contracted in favor of one William Seay, long before the date at which the sales took place.

The cause was submitted to a jury, who found a verdict for the plaintiffs. An ineffectual effort having been made for a new trial, the court pronounced its judgment, annulling and setting aside the sales, both with respect to the interpleaders and defendants. The intervenors appealed.

The record is loaded with oral and documentary evidence, all tending to prove the fraudulent nature of the transaction between Thomas and Levi Foster. The jury and court were of opinion that the plaintiffs had made out their case as charged in the petition. The only question then, arising

WESTERN DIST.
Sept. 1837.

FOSTER'S HEIRS
vs.
FOSTER'S ADMX.
ET AL.

Where sales of certain slaves are made by public act, in due form of law, having the appearance of verity and good faith on the face of them, and the vendee afterwards mortgages these slaves to a creditor, who is ignorant of the fraud practised by the vendee upon his vendor, in acquiring them, the mortgagee's rights will not be affected by the fraud between the original parties.

A *bonâ fide* purchaser, ignorant of the nature of the sale to his vendor, cannot be affected by any fraud between the original parties: So, a mortgage being in the nature of an alienation, the mortgage creditor, who had no' knowledge of the *fraud* between the mortgagor and his vendor in acquiring the mortgaged property, will not be prejudiced by it.

in the cause is, whether Hillyer and Robbins shall be prejudiced by the fraud between the original parties to the sales.

The first sale of the 5th May, 1830, was by act under private signature, but duly acknowledged and admitted of record in the office of a notary public the following day. The second, of the 13th of the same month, was by public act, in due form of law, and both of them set forth the payment and receipt of the prices for the slaves, and in every respect wear the appearance of verity and good faith.

It is not pretended, nor is there any testimony in the record showing that Hillyer and Robbins had any knowledge of the vices that tainted the transaction between the two Fosters. The slaves were delivered to the vendee, who retained them peaceably in his possession, and in December, 1830, seven months after the sales, mortgaged them to the intervenors in order to secure the payment of a debt, the existence of which is not denied. Had Levi Foster sold the slaves to a third person, ignorant of the nature of the sale from his brother, it cannot be doubted that the vendee's title would have been good. A mortgage is in the nature of an alienation, and the mortgage creditor who had no knowledge of the fraud, would be equally protected with the vendee. No principle is better established in law or moral justice, than that third persons acting in good faith, shall not be prejudiced by the frauds of others, in which they had no agency or concern.

It does, therefore, appear to us, that the mortgage executed by Levi Foster to Hillyer & Robbins, is valid in law, and affects the slaves therein mentioned, for the entire payment of their debt.

We think there is error in the decree of the court below.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court, so far as it relates to the intervenors, Hillyer & Robbins, be avoided and reversed, and that the plaintiffs and appellees pay the costs of appeal.