FREDERICK WILLIAM SCHMIDT *v.* FREDERICK FREY and others.

Though the negotiability of a note secured by mortgage is not restricted, so far as the personal responsibility of the parties to it is concerned, by its being *paraphed,* *ne varietur,* by a notary, for the purpose of identifying it, and though want of consideration cannot be opposed to a transferree, for a valuable consideration, before maturity, who received it in the usual course of business, the mortgage given to secure the note does not partake of its negotiability. It is merely assignable, and is subject to all the equities existing between the original parties. *Per curiam*: A mortgage cannot be transferred to a third person, so as to give him any greater right than the mortgagee himself possessed.

APPEAL from the Commercial Court of New Orleans, *Watts,* J. This was an action by Schmidt, a creditor of Zimpel, to annul a conveyance made by Frey to Manouvrier of property belonging to Zimpel, on the ground of fraud and simulation, and to subject the property sold to the payment of plaintiff's claim. There was a judgment below in favor of the plaintiff, rescinding the sale, annulling a mortgage executed by the purchaser, Manouvrier, to secure the payment of certain notes given for the price, and delivering the property liable for the claims of the petitioner and the other creditors of Zimpel, but reserving to the holders of the notes executed by Manouvrier, their recourse against the parties to those notes by reason of their personal responsibility. The holders of the notes appealed from this judgment.

*Benjamin,* for the plaintiff.

I. Although the holders of the notes may have been ignorant of the facts, they did not receive the notes in the regular course of business, but under suspicious circumstances, such as should have put them on their guard. The notes were given by Frey & Co., to the present holders, in settlement of claims against them; those to Lizardi & Co. and Ganahl & Co., in settlement for bills of exchange. This is not in the usual course of business. The course of business of commercial houses is not to settle protested bills of exchange by mortgage notes, having long terms to run.

II. A mortgage is not negotiable, but only assignable; although the *principal* obligation, that is to say, the promissory note is negotiable, the *accessory* obligation, that is to say the mortgage, is not so. As a general rule, a mortgage cannot be transferred to a

third person, so as to give him greater rights than the mortgagee himself possessed. If Frey had made, as Zimpel's agent, a mortgage in his own favor on Zimpel's property, he evidently could not by an authentic act, transfer validly this mortgage to a third person. He could transfer no greater rights than he himself possessed, and he would have had none whatever. How could he, then, transfer to the appellants a mortgage which, in his own possession, was null and void; and by this transfer give validity to a mortgage which previously was without legal existence? The appellants contend, that this result follows, because the mortgage was given to secure promissory notes negotiable in their nature.

Let us examine this position:—The principle contended for amounts to this, that mercantile instruments in a negotiable form, communicate the character of negotiability to all obligations that are accessory to them. This principle is evidently untenable. The principal obligation may be valid and binding, and the accessory be null. The principal obligation may be voidable, and the accessory be valid. Civil Code, arts. 3004, 3005. A mortgage is analogous in its nature to suretyship. Suppose A., by authentic act, binds himself as surety to B., to pay the note of C.; that, by a subsequent act, B. releases A. from this suretyship, and then transfers the note to a third person with the act of suretyship, such third person being ignorant of the subsequent release,—on what possible ground could it be pretended that such third person could hold the surety liable? Where is the law that renders an authentic act negotiable, so as to shut out the signer of it from defences against third persons, which he would be entitled to against the original parties? Does a mortgage stand on a different footing? Does it change its nature, according to the nature of the principal obligation it secures? Is it *negotiable*, so as to shut out equitable defences against third persons, when it secures a promissory note, and merely *assignable*, so as to admit equitable defences, if granted to secure an open account?

This subject may be presented perhaps in a more striking light. The appellants can certainly have no better right to this mortgage, than if Frey had conveyed it expressly to them, by authentic act. The implied transfer of the mortgage, resulting from the transfer of the notes, can certainly not be stronger, better, nor more efficacious than an express transfer by public act would be. Now, if Frey had gone before a notary and declared that he transferred to the appellants all his mortgage rights on the property contained in the act before Boswell, the court could not listen for an instant to the pretensions of the appellants, because a reference to Boswell's act would at once show, that Frey had no rights, and that the mortgage which he was undertaking to trans=

fer in payment of his own debts belonged to Zimpel. Yet the appellants contend, that the *implied* transfer to them is valid, when it is clear that an *express* transfer would not be so.

III. There is a dilemma from which the appellants cannot possibly escape. They took notes marked, "*ne varietur.*" It has been repeatedly decided, that the mark does not affect the negotiability of notes, and that persons taking them are not bound to refer to the acts with which they are identified. But the appellants either had cognizance of the act before Boswell, or they had not. If they had not cognizance of the act, and did not take the notes on the faith of the mortgage, it is clear, that they cannot complain that the mortgage should be declared null and void, when proven to have been given in fraud. If, on the contrary, they had cognizance of the act, and took the notes, as they pretend, relying on the mortgage, then the very act itself gave them notice that the notes they were taking belonged to Zimpel, of whom Frey was agent, and that, therefore, Frey had no right to them to pay his own debts. It is upon this ground that the judge below decided the case. He said to the appellants; "If you claim under the act, you make yourselves privies to it, and as such are affected by the notice which the act itself affords, that Frey had no right to transfer these mortgage notes, in payment of his own debts. If you do not claim under the act, and are strangers to it, you have nothing to complain of, if it be rescinded as void for fraud."

IV. The counsel for the Union Bank cites Duranton in support of the distinction that, if Frey had transferred to the appellants by *gratuitous* title, the mortgage would be null as to them, even though ignorant of the fraud; but otherwise, if he transferred by *onerous* title. The reason given [is, that donees are contending for gain, and therefore are to be less favored than those who seek to avoid loss.

If this distinction and the reason for it be well founded, we claim a judgment in our favor on this very ground. The record establishes, that the appellants' title is essentially *gratuitous*, that is, the notes were transferred to them to secure a *pre-existing* debt. They gave *nothing* for the notes when they received them. If their mortgage be cancelled, they will be just where they were before—they are contending for a gain at our expense. If they had given value for these notes, at the time of taking them, they might perhaps, with some show of justice, claim favor; but they are endeavoring to *gain* at the expense of Zimpel's creditors, the amount of a desperate claim against Frey, with which Zimpel and his creditors have nothing to do. They are essentially in the same position as the donee cited by Duranton as an example. There is no more reason for taking Zimpel's property from his

creditors, to pay to the appellants debts due to them by Frey, than to pay them any other desperate claims they may have against other debtors.

*Grima*, for De Lizardi & Co. appellants, contended that if the appellants be considered as *bona fide* holders of the notes secured by mortgage, they are entitled to all the benefit of the mortgage, the transfer of the notes operating a transfer of the mortgage. Civil Code, art. 2621. A notarial transfer was necessary only to entitle the transferree to proceed *via executiva*. Parties acting in good faith cannot be prejudiced by the frauds of others. See the cases in 9 Mart. 89. 12 Mart. 236. 3 La. 241. 11 La. 401, 407.

*Denis*, for the Union Bank, appellants. Want of consideration in a note cannot be opposed to a *bona fide* endorsee. *Hubbard* v. *Fulton's Heirs*, 9 Mart. 87. *Fusilier* v. *Bonnin*, 12 Mart. 235. *Abat* v. *Gormley*, 3 La. 241. Duranton, vol. 10, No. 575, distinguishes between those who acquire from a debtor by onerous contract, and those who acquire by a gratuitous title. To revoke a contract of the first kind, he states that the party who contracted with the debtor, must be shown to have been an accomplice in the fraud, and that this is not necessary in the second case. The reason given by him for the distinction is, that gratuitous donees are striving to acquire, while the parties to an onerous contract are contending to avoid loss. See Nos. 581, 582, 583 of same volume of Duranton, also 2 Chardon, pp. 128, 132. And see the case of *Foster et al.* v. *Foster*, 11 La. 401.

*G. B. Duncan*, for Ganahl & Co., appellants.

Morphy, J. In the beginning of 1837, C. F. Zimpel, who was largely indebted to the plaintiff and others, departed for Europe, leaving for his agent here, Frederick Frey. The latter took possession of Zimpel's property, and on the 19th of September of the same year, executed before Wm. Boswell, a notary public, two sales, whereby he conveyed a considerable amount of his principal's property to G. P. Manouvrier. The purchaser assumed certain mortgages existing thereon ; and for the balance of the price gave four notes of $3058 33¼ each, and four other notes of $9750 each, drawn by himself to the order of and endorsed by E. Johns & Co., payable respectively at nine, fifteen, eighteen and twenty-four months after date, and secured by mortgage on the premises sold. These notes, before their maturity, were passed by F. Frey to the Union Bank, Lizardi & Co., and F. Ganahl & Co. as the agents of Fabre & Merle of New York,

in payment of, or as collateral security for pre-existing debts, which he owed to them. The present suit was brought by the petitioner, a judgment creditor of Zimpel, to annul these sales as fraudulent and simulated, and to subject the property, which was the object of them, to the payment of a balance due to him. The Union Bank, F. de Lizardi & Co., and F. Ganahl & Co., who were not originally cited as defendants, were subsequently made parties to the suit. After pleading the general issue, and the prescription of one year, they aver, in substance, that they are *bona fide* holders of the notes respectively held by them; that they received them before maturity, for a valuable consideration, and in the regular course of trade, without notice of the fraud and simulation set forth in the petition; and that they are, therefore, entitled to all the rights of mortgage and privilege resulting from the notes, and the deeds of sale and mortgage with which said notes are identified. Manouvrier and Frey pleaded the general issue. There was a judgment below annulling and rescinding the sales, ordering the mortgages given by Manouvrier to be cancelled, and restoring the property to the possession of Zimpel, to be subject to the claims of the petitioner and of his other creditors; but reserving to the holders of the notes, any rights they may have against the parties to the same, by reason of their personal responsibility. From this judgment, the original defendants, Manouvrier and Fey, have not appealed; but the Union Bank, Lizardi & Co. and F. Ganahl & Co., have brought up the present appeal.

The facts of the case in relation to the fraud and simulation charged in the petition are so clearly proved by the testimony, as to admit of no dispute. They fully sustain the judgment appealed from; but the counsel for the appellants contend, that admitting the sales made by Frey to be simulated, yet, inasmuch as they are holders in good faith of Manouvrier's notes, secured apparently by a mortgage on the property, they cannot be deprived of that mortgage; and they rely on the various decisions of this court which declare, that the negotiability of a note is not restrained by the circumstance of its being paraphed, *ne varietur*, by a notary public; and that the want of consideration cannot be opposed to a fair endorsee. 9 Mart. 87. 12 Ib. 235. 1 Ib. N.

S. 143. 3 La. 241. Giving to the appellants the full benefit of the rule laid down in relation to instruments in a negotiable form, although they took these notes in payment of, or as collateral security for pre-existing debts, and, therefore, not perhaps strictly in the usual course of trade, it appears to us, that these decisions do not exactly meet the case before us. They establish this rule of negotiability only with regard to the personal responsibility of the parties whose names are on a promissory note ; but the question here is, whether the mortgage given to secure the payment of such a note partakes of this negotiability, or is merely assignable, and subject to the equities between the original parties.

It is clear, that a mortgage cannot be transferred to a third person, so as to give him greater rights than the mortgagee himself possessed. If so, does the mortgage change its nature according to the nature of the principal obligation which it secures ? Can it be said to be negotiable, so as to shut out equitable defences against third persons when it secures a promissory note, and merely assignable, so as to admit equitable defences, if granted to secure an open account ? Whatever be the principal obligation to secure which a mortgage is given, does it not pass to the transferree, such as it existed in the hands of the mortgagee ? A principal obligation may be valid and binding, and the accessory be null. If, for instance, to secure a promissory note, A. without any authority, mortgages the property of B., the third holder of such a note could surely acquire no right whatever in the property, although the parties to the note would remain personally responsible to him. The transfer of the mortgage to the appellants, which results from the transfer of the notes they hold, cannot certainly be stronger or more efficacious than an express transfer by public act would have been. Now, if Frey had gone before a notary, and declared that he transferred to them all his mortgage rights on the property as mentioned in the sales executed before the notary, Boswell, it is clear, that the appellants would not be listened to, in an attempt to assert any rights under such a transfer, because a reference to the sales would at once show that the mortgage which Frey had undertaken to transfer in payment of his own debts, belonged to his principal, Zimpel. If such would be the effect of an express transfer, how can it be con-

tended, that they have acquired any rights by the implied transfer, resulting from the mere delivery of the notes? But, it is said, that the appellants took these notes in ignorance of any fraud in the transaction, and that they were not bound to examine the acts of mortgage at Boswell's office. This is true, as long as they are satisfied with the personal responsibility of the parties to these notes, and look only to them; but the moment they assert any mortgage rights on the property under these sales, they at once make themselves privies to them, and are affected by the notice which these acts afford, that Frey had no right to transfer the mortgage notes which belonged to Zimpel, in payment of his own debts. Persons receiving negotiable notes secured by mortgage, cannot be benefited by their neglect to examine the acts with which the notes are identified. The appellants either had cognizance of the sales before Boswell, or they had not. If they had not cognizance of these acts, and did not take the notes on the faith of the mortgage, they cannot complain that the mortgage should be declared null and void, when proved to have been given in fraud. If, on the contrary, they took these notes relying on the mortgage, and examined the sales, they were fully informed that they were taking notes which belonged to Zimpel, and that, therefore, Frey had no right to use them to pay his own debts.

Article 1982 of the Civil Code, which is invoked by one of the appellants, is inapplicable to the present case. The complaint is not that Zimpel, as owner of the property, has given illegal preferences to his creditors; but that Frey, as the mandatary of Zimpel, has made false, feigned and simulated sales of the property, to the prejudice of the creditors of his principal, and has applied the proceeds to his own use. *Petit v. His Creditors*, 3 La. 28.

*Judgment affirmed.**

---

* *Grima*, for a re-hearing.—There appears to be no analogy between this case and that pointed out as an example in the judgment of the court : " When A., *without authority*, sells the property of B., the third holders of the notes acquire no right to the property, although the parties to the sale remain personally responsible." In such a case, the principle is no doubt correct. But in the present case, it is not contested, that Frey was the duly authorized agent of Zimpel, and that he had full authority to sell and mortgage. He did not, therefore, *sell without authority*. But it is contended, that the sale was a simulated one. Let it be conceded. The fraud existed between the vendor and vendee. The question then arises, and the

Sr 442
109  524

---

only question in this case concerning these defendants : If a simulated or fraudulent
sale be made, and notes secured by mortgage be given, can third parties who have
negotiated such notes, or otherwise become the *bona fide* holders of them, be pre-
judiced by the fraud between vendor and vendee, in which they had no agency or
concern ?

This is not the first time this question has been decided by this tribunal ; and I
shall confine myself to referring the court to the case of *Foster's Heirs* v. *Foster's
Executors et al.* 11 La. 401.

*Re-hearing refused.*