## IRA CARPENTER v. CHARLES W. and A. ALLEN.

The vendor, the production of whose authorization was promised, without being in default, does an act equivalent to such production of the original act of authorization, when he produces a ratification of the sale in due form.

A party's right does not depend upon the registry of the act of ratification.

Whenever one of two innocent persons must suffer, the law throws the loss upon him by whose negligence or fault the damage is occasioned.

A mortgage is a real right, a *jus in re*, which, in general, so far as third persons are concerned, can only be created by an observance of the forms of law. Like the sales of real estate, it is necessary that it should be properly recorded. Third persons, without actual notice, are not bound to look beyond the registry; and they may in good faith lawfully acquire from the holder of such right, all his interest which appears on the books of the office.

APPEAL from the District Court of Point Coupee, *McVea*, J.

*T. J. & Wm. H. Cooley*, for plaintiff. *A. Provosty*, for defendants and appellants.

MERRICK, C. J. A. F. McMurtry, on the 7th of December, 1853, as agent for three others, and guardian for two minors, sold an undivided one-third of four slaves to O. L. Ross, on a credit of twelve months. The price was $1,100, and a note, paraphed by the notary, was given payable to the order of A. F. McMurtry, with a special mortgage on two of the slaves.

The act of sale contained this clause: "The vendor, A. F. McMurtry, appears in this sale as mandatory of Jane C. Moss, Sarah A. Laycock, and of Emma McMurtry, and as guardian of the minors John McMurtry and Mary Helen McMurtry, and by these presents binds himself to furnish the vendee with his written authorization to make this act within sixty days from its date."

The note was transferred before maturity to the plaintiff. Ross subsequently sold the property to the defendants, Charles W. and A. Allen, who are sued in the hypothecary action as third possessors.

Neither Ross nor his vendors have been disturbed by any outstanding title, but McMurtry, instead of producing the written "authorization" to make the act within sixty days, procured (as alleged in the petition) the written ratifications of Jane C. Moss, Emma McMurtry, and Sarah A. Laycock and her husband Dryden Laycock, bearing date in April, 1854. The petition and supplemental petition allege the death of the minors John and Mary Helen McMurtry, and that the parties ratifying are their heirs.

The defendants excepted to the petition on the ground that it did not show that A. F. McMurtry ever complied with the stipulated condition to furnish his written authorization to act as mandatory.

The exception was overruled, and judgment rendered against the defendants on the merits. They appeal.

In regard to the covenant on the part of McMurtry to produce the authorization of his principals in sixty days, it will be observed that it is

unaccompanied with either *a penalty or condition*, and it is not pretended that McMurtry or his principals were put in default. Ross sold the property, and was no longer in a condition himself to tender the same to the vendors, and demand a rescission of his contract; moreover, he executed his note in a negotiable form, and by delivery put the same in circulation. The vendors, the production of whose authorization was promised, without being in default, do an act equivalent to such production of the original act of authorization, when they produce a ratification of the sale in due form. *Omnis ratihabitio retrotrahitur et mandato priori acquiparatur.* C. C. 2979, 2252; 2 An. 28; Lex 12, § 4, Dig. Lib. 46, T. 3. The exception was, therefore, properly overruled.

Some proof has been introduced to show, and it is insisted on here, that Ross was the owner of the slaves when he purchased the one-third interest of the heirs by prescription. It is also contended that the note is due to the heirs of Mrs. McMurtry, and that the plaintiff must have known that it did not belong to McMurtry.

The heirs, we reply, have not complained of McMurtry's acts. On the contrary, they have ratified them. We perceive nothing in the record impeaching the plaintiff's good faith in obtaining the note.

The act of mortgage was recorded. Plaintiff's right does not depend upon the registry of the acts of ratification.

Without deciding the question as to the title of Ross, we shall consider whether the plaintiff can be affected by the supposed equities between Ross and his vendors.

It may be assumed that O. L. Ross, whether he could have pleaded prescription against his co-heirs or not, had the right to grant the mortgage which he did grant, and that neither he nor his vendees have been disturbed, or even threatened by any superior outstanding title.

Had the transferee of the note examined the mortgage, as doubtless he did, he would not have discovered anything which would give rise to a suspicion that the mortgage had not been given in good faith.

The case, therefore, is unlike the case of *Schmidt* v. *Frey*, 8 Rob. 435, where the agent who executed the act of sale had no authority to stipulate a mortgage for his own benefit, and where the holder of the note would have been aware of the fact if he had examined the act.

It is also unlike the case of *Bowman* v. *McElroy & Bradford*, where a simulated sale, and the notes given as the pretended price, were not permitted to prejudice *prior* mortgage creditors. 14 An. 587.

In the above cases, the right of the mortgagor to create the incumbrance to the prejudice of other and anterior rights was denied, and, at most, those cases only affirm the doctrine that a mortgage executed by one having no right to make the same, does not acquire any additional force from the fact that it is transferred to an innocent third person. It rests upon the well settled principle, that one cannot create any valid right upon the thing of another.

But the case at bar presents this question, viz., whether a person, who finds a mortgage duly recorded, which has been executed by one having

lawful authority to make the same, may acquire, for a full price and in good faith, such mortgage, notwithstanding secret equities may exist between the original parties to the instrument. We think the question ought to be answered in the affirmative, for two reasons, viz:

1. Whenever one of two innocent persons must suffer, the law throws the loss upon him by whose negligence or fault the damage is occasioned; and it is manifest that if Ross had not executed the mortgage, the plaintiff would not have parted with his money on the faith of that security.

2. A mortgage is a real right, a *jus in re*, which, in general, so far as third persons are concerned, can only be created by an observance of the forms of law. Like the sales of real estate, it is necessary that it should be properly recorded. The registry of mortgages then becomes, so far as third persons are concerned, the evidence of the mortgage; and as such registry is for their protection, third persons, without actual notice, are not bound to look beyond the registry; and they may in good faith lawfully acquire from the holder of such right all his interest which appears upon the books of the office. This may be illustrated by reference to the doctrine of sales. A. makes a fraudulent or simulated sale of his property to B., and the sale is recorded, and a counter letter, unrecorded, is also reserved. C., observing upon the registry an apparently valid title in B., purchases the property in good faith, and for a fair price. Neither A. nor B. nor their creditors, can disturb C. in his possession. Why? Because C., in examining the records, used all the diligence required by the law; and having acquired a legal title (that is, a title acquired according to the prescribed forms of law) cannot be deprived of his property by any secret equity existing between A. and B., inasmuch as his equity is at least equal to that of B., and he is fortified also by the legal title.

Now, a mortgage, which is a right upon real estate and slaves, created by observing the forms of law, stands in the same situation as the title to the same property, except that the forms prescribed for its transfer are different. But, as already said, in order to ascertain its validity, the registry of mortgages is to be examined. A party, then, who wishes to acquire a mortgage, examines the registry, and he finds that the mortgage is in form regular and legal, and made by one having power to create the incumbrance. Why should he not be permitted to purchase it in good faith, as he might have done the right of property in the example just given? If he may, then he can lawfully acquire it in any of the forms of law; by notarial act, by private act, by indorsement, or simple delivery of the note which carries with it the accessory obligation. C. C. 2436, 2615.

When he has thus acquired a mortgage executed by the owner in the forms prescribed by law, by a transfer also made in one of the modes prescribed by law, he becomes invested with a legal right, and precisely the same question is presented as in the other case, viz., Shall a secret equity, existing between other parties, defeat this legal title? Aside from the force our law gives to the legal right, we may borrow a reply from another system of laws, viz., the equities between the parties being equal, the legal title must prevail.

It is therefore ordered, adjudged and decreed by the Court, that the judgment of the lower court be affirmed, with costs.