The opinion of the Court was delivered by
Todd, J.
The plaintiff, as administrator of the succession of Charles H. Morrison, deceased, sues to annul the sheriff's sale and adjudication of the property, described in the petition, to the defendant, W. W. Farmer, and to have the said property returned to the succession, and recover the rents thereof from the date of said sale.
The grounds of nullity alleged are, substantially, as follows:
1. That at the time of said sale and adjudication, the defendant was the administrator of the succession of Morrison, to which the property in question belonged at the time, and, as such administrator, he was prohibited by law from purchasing said property at the judicial sale.
2. That before the sale in question, the defendant entered into an illegal combination with Sigismund Meyer, to prevent his bidding at the sale of said property, which he intended to do, promising, as the inducement therefor, that he would convey to said Meyer a part of the property sold. That the effect of this combination was to prevent competition, whereby the property was purchased by the defendant far below its real value.
*1018 The defendant, filed peremptory exceptions, mainly to tlie effect that an offer to refund the money paid by him at the sale attacked was a prerequisite to the institution of the suit, which had not been done, and that the action was prescribed, pleading the prescription of one year.
The exceptions were voluntarily withdrawn by the defendant, without prejudice to his right to insist on reimbursement of the amounts expended by him in the purchase of the property, and to have said right recognized in the judgment tobe rendered, the defendant declaring himself willing to waive all such exceptions and put the case squarely before the court on its merits. The answer of the defendant, besides many other things, contains averments substantially to the effect, that he bought the property in question; that he had the right to buy, because it was not under his administration when sold. That it was seized and sold by the sheriff under executory process, and by its seizure was taken from his possession and control as administrator, and for the further reason, that he was an ordinary partner of C. H. Morrison, which excepted him from the inhibition of the Code, relative to purchases made of succession property by administrators. He admitted an understanding with Meyer, relative to the sale of the property and bidding thereat, but denies that it was an illegal combination, that it prevented bidding at the sale, or was intended to do so, or that it caused the property to sell for less than it would otherwise have sold for. He denies being liable for rent, in any event, before the institution of the suit; avers that he paid out moneys for taxes, repairs, insurance, etc., which he pleads in compensation to rent, should the salo be annulled, and further claims, in that event, to be reimbursed the price paid for the property, with interest, and that such payment be made a condition precedent to the annulling of the sale.
W. N. Potts intervened in the case, alleging that part of the property in question had been mortgaged to him by the defendant; that the mortgage was consented on his part in good faith, without knowledge of any defects in the title of mortgagor ; and in the event that the sale is annulled, claims to be protected, etc.
The case was tried by a jury, and from a judgment on their verdict in favor of defendant, the jdaintiff has appealed.
The property was sold under executory process, taken out by a creditor of the succession, to enforce a special mortgage.
It was purchased by the defendant, who, at the time of the sale, was - administrator of the succession of C. H. Morrison, deceased, to which the property belonged, the mortgage having been given thereon by' the deceased. It was bid off for two-thirds of the appraisement — the amount bid being $7,3331, the defendant being the sole bidder. It *1019 had been inventoried at $12,000, and was appraised before the sale at $11,000. Shortly after the sale, a part of the property purchased was conveyed, by the defendant, to Sigismund Meyer.
1. The first ground of nullity touching the capacity of the defendant to purchase, under the conclusion we have reached, it is unnecessary to decide.
The evidence respecting the. alleged agreement between the defendant and Meyer, is substantially to the effect:
That a short time before the sale took place, and on the same day, the defendant learned that Meyer intended bidding for the property. The parties met and had a conversation on the subject. The defendant stated, as a reason for wishing to buy the property, that he desired to purchase it for the minor child of Charles Morrison, and nephew of defendant. Meyer at first persisted in declaring his intention to hid on the property, but finally, Fanner having promised to sell Mm the “ King Place ” for $4,000, Meyer consented not to bid, absented himself from the sale, and Farmer, being the only bidder, the property pms adjudicated to him at two-tliirds of its appraised value. Subsequently, as agreed on, he made the conveyance to Meyer.
Even if the defendant had the right to bid for and buy the property, as he claims, Ms proposition that lie had the right to make any agreement with another person that any one else could have made, and that he was .in no manner trammelled about bidding, or in making agreements about the bidding or purchase of the property, by tbe fact of being administrator of the-succession, is not logical or correct. Even could he have bought at the sale, his duties as administrator and fiduciary, were binding upon him in all respects, and required him to do nothing adverse to the interests of the creditors, whose interests he represented and was hound to protect. As administrator, his first duty was to the creditors. And whatever may have been his relations and duties to others, and however great his appreciation of them, and though his faithful discharge of such duties, his fidelity and devotion may and do illustrate the best and holiest of human virtues, yet it still remains true, that under the law defining and regulating his official duties, liis first obligation was to the creditors. Instead of doing anything, or consenting to anything that might lessen the chances of a sale for a full price, he should have done all that was legitimate to cause, the property to bring the very highest price. It is true, that he was not hound to appear at the sale and hid, hut the inference that if he had not appeared and bid, Meyer would have obtained the property at the same price at which he bought, cannot be sustained. Although there were no higher bids against him, the uncle and tutor of the minor *1020 child of Charles Morrison, it does by no means follow there would not have been bidders against Meyer, a more stranger.
Nor can we accept as a fact, that in the absence of any agreement between the defendant and Meyer, neither of them would have bid more than two-thirds of the appraised valué of the property. Meyer says, he would have done so. Defendant says, he would not, but that is merely declaratory of his purpose and intention, no doubt, honestly made, but no man can tell what would have been his conduct under circumstances which never occurred; It is not certain and cannot be made certain, that he and Meyer, bidding against each other, would not have run the property mi to its full appraised value. But it is not by .any particular result that the principle underlying this whole matter is to be measured or applied.
The general rules of law, on any subject, áre not to be abrogated, evaded or impaired, by showing, that in a special case, no injury resulted from their violation. The wise purpose of the law is to prevent all tendencies to wrong or injury. The bargain in this instance was wrong, and even could we consider the question whether it was, in fact, injurious, the absence of injury is not susceptible of demonstration.
The defendant argues, that if the agreement had never been made, the property would have brought the same amount. What we just said will apply to this reasoning; but we may inquire what was the object or purpose of the agreement, if either party, by bidding one dollar or one cent over the two-thirds, would have gotten the property. Neither could have gotten it for less, and the sole purpose of the agreement was to prevent its being run up higher.
Under principles of law, firmly imbedded in every known system of jurisprudence, the sale must be annulled. These principles are best described by an eminent law writer, in the following words :
“ Agreements, whereby parties engage not to bid against each other at public auction, especially in cases where such auctions are required or directed by law, as in case of sales of chattels, or other property under execution, are held void; for they are uuconscientious and against public policy, and have a tendency to injuriously affect the character of public sales at auction, and to mislead private confidence. They operate virtually as a fraud upon the sale.” Story Eq. Juris. §290; C. C. 1847, 12 par.; 9 R. 486; 21 Wall. 448; 3 Johnson, 29.
The next question that presents itself is in regard to the liability of the defendant for rents. The rent is shown to be worth fifty dollars per month. For this he is liable from the date of the sale, 3d of March, 1877. He cannot be regarded as a possessor in good faith. He was bound to know that his title was “ vicious or defective.” C. C. 3452. *1021 Whatever, in point of fact, he may have believed, the law will presume that he knew of the defect in his title, even without regard to the fact that he contributed to create that defect.
Whatever may be the claims of the defendant for reimbursement of the sums applied to extinguish succession debts, and of expenses incurred for the preservation of the property and for improvements, etc., the succession cannot now he properly condemned to return the same, although the defendant is entitled to the payment of claims which may be established on these accounts, out of the proceeds of the sale of the property. Such settlement and reimbursement can only take place in due course of administration. It will be time enough for the defendant to urge those claims and enforce the privilege to which he is entitled, in proper proceedings for the distribution of the proceeds of the property. Such sale and account, within a reasonable delay, he has a right to provoke.
We have recognized the right of the succession to recover rents, but we.will restrain their collection until after the adjustment of defendant’s claims already mentioned.
The interven or was no party in the proceedings between the defendant and Meyer, and is not shown to have known of the defect or vice in the title. There was nothing to indicate such vice in the records. He acted, in taking the mortgage, upon the faith of a judicial sale translative of the property, was, therefore, in good faith and entitled to protection. 11 La. 401; 4 An. 286; 16 An. 436; 29 An. 604; 31 An. 7.95; 32 An. 420.
It is, therefore, ordered, adjudged and decreed, that the verdict of the jury be set aside, and the judgment thereon he annulled; and it is now ordered, adjudged and decreed, that the adjudication made on the third of March, 1877, at the sheriff’s sale, in the case of Godfrey vs. the succession of Morrison, of the property described in the petition, and the nullity of which is claimed herein, be annulled ; that said property he declared still to belong to the succession of C. H. Morrison ; that said succession recover of the defendant rent, at the rate of fifty dollars per month, from the date of adjudication to that of delivery of possession of said property, hut that the execution of this part of the decree for rents be stayed till the adjustment, of defendant’s claims against the succession, herein referred to, in due course of administration; it is further ordered, the right to assert which is hereby recognized and reserved.
It is further ordered, adjudged-and decreed, that the right of the intervenor to the special mortgage claimed ou part óf the property, as described in Ins petition, he and the same is recognized, and the said *1022 property returns to the succession, subject to the interven or’s said mortgage. The costs of both Courts to be paid by defendant and appellee.
The Chief Justice concurs in the opinion and decree, without expressing any views on the claim of the intervenor.