No. 2062

Second Circuit Appeal

HARRY S. LEDERMAN v. JAMES S. McCALLUM

---

(February 3, 1925, Opinion and Decree)
(March 2, 1925, Rehearing Refused)

---

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Registry—Par. 8, 11.**
In view of Articles 3322 and 3323 of the Civil Code and Act No. 190 of 1918, which provide for the effect of the recordation of a judgment, a judgment of the Court of Appeal on which a rehearing is pending which has been filed by the deputy clerk of the district court, but not recorded, does not take effect against the property of the judgment debtor because the law requires recordation and not mere filing.

2. **Louisiana Digest—Registry—Par. 7.**
Act No. 215 of 1910, which has reference to the rank of the claims of creditors who file such acts or judgments on the same day is not in conflict with Act 190 of 1918, which provides for recordation of acts and judgments and their effect.

3. **Louisiana Digest—Registry—Par. 12.**
Act No. 190 of 1918, makes it possible for a litigant who obtains a judgment against the adversary in an appellate court to record this judgment thereby making it act as a mortgage against the property of judgment debtor before this judgment becomes final.

4. **Louisiana Digest—Registry—Par. 7, 12.**
Under Act 190 of 1918, judgments are given effect between the date on which a judgment is rendered in an appellate court and the date upon which it becomes final provided the party in interest has obtained a copy of the decree and has the same registered. The mere filing of the decree is not sufficient.

Appeal from the Thirteenth Judicial District Court of Louisiana, Parish of Rapides, Hon. Leven L. Hooe, Judge.

This is an hypothecary action brought against the purchaser of property which was sold after a judgment had been filed, but not recorded, against the record owner.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

Hawthorne and Stafford, of Alexandria, attorneys for plaintiff, appellee.

B. T. Dawkins, of Alexandria, attorney for defendant, appellant.

ODOM, J. On a date prior to June, 1919, the plaintiff in this suit was run over and injured by an automobile owned and driven by R. E. Pool. He brought suit in the District Court of Rapides Parish to recover damages sustained on account of said injuries. His demands were rejected and his suit dismissed. From that judgment he appealed to this court where, on June 28, 1919, the judgment of the lower court was reversed and judgment rendered in his favor for the sum of $500.00. On the date that the judgment was rendered by this court, to-wit: June 28, 1919, the defendant Pool owned certain real estate in the city of Alexandria, Louisiana, and on the same day J. W. Hawthorn, one of the attorneys for the plaintiff, Lederman, took the original judgment of the Court of Appeal from the records and handed it to A. V. Hundley, a deputy clerk of the District Court of Rapides Parish, and asked him to file it for record. The deputy clerk, Hundley, then and there made the following endorsement on said judgment:

"Filed, June 28, 1919, at 2 o'clock P. M. A. V. Hundley, Deputy Clerk."

Hundley was at the time at his desk in the District Court clerk's office.

Subsequently thereto, but on the same day, P. M. Hetherwick, clerk of the District Court of Rapides parish, instructed his deputy, Hundley, not to index or record said judgment in the mortgage records of the parish. Thereupon Hundley, the deputy clerk who had filed the same, notified Hawthorn, the attorney, that he had been instructed by Hetherwick, the clerk, not to index or record said judgment. Hundley says that his recollection is not clear on the subject but that he presumes he then took the original judgment and placed it back in the record with the other papers and documents in the case of Lederman versus Pool. It is not clear whether these papers were then in the District Court clerk's office or elsewhere. We think that makes no difference whatever.

An application for a rehearing in the case was timely filed and a rehearing was denied by the court on December 5, 1919, on which date the said judgment became final. This judgment was indexed in the mortgage indices and duly recorded in the mortgage records of Rapides parish on March 23, 1920, and the record now in the mortgage office bears the following notation:

"Filed June 28, 1919, at 2 o'clock P. M. A. V. Hundley, Deputy Clerk.
"A true record, March 23, 1920."

As stated already, on June 28, 1919, the day on which the Court of Appeal rendered judgment in favor of Lederman and against Pool and the day on which said judgment was handed to Hundley, deputy clerk, and the above noted endorsement made thereon, said Pool, defendant, owned certain real estate situated in the city of Alexandria, Rapides parish.

On the 14th day of August, 1919, sixteen days thereafter, he sold his said real estate to James S. McCallum, the defendant in this suit, for the sum of $4000.00 cash, under authentic act of sale, which was filed and recorded in the conveyance records of

Rapides parish on the following day.

Prior to this sale said judgment had not been noted, recorded or registered on the daily register of conveyances, mortgages or other instruments kept and used by the District Court clerk and ex-officio recorder of mortgages for Rapides parish, where the property is situated, nor had the same been recorded in the mortgage records of said parish nor indexed in the indices thereof.

It will thus be seen that at the time the defendant in this suit, McCallum, purchased said property the application for a rehearing in the case of Lederman versus Pool was still pending in the Court of Appeal, said application having been filed on July 9, 1919, and finally disposed of on December 5, 1919; and, as stated, said judgment was not indexed or recorded in the mortgage records of the parish of Rapides until March 23, 1920.

Prior to the sale of the property by Pool to McCallum the purchaser employed counsel to examine and pass on Pool's title to the property. After examining the records the attorneys reported to McCallum that Pool's title thereto was good and that said property was unincumbered with the exception of two mortgages which were paid and cancelled at the time of the sale.

It is admitted that at the time the defendant, McCallum, purchased the property neither he nor his attorneys had any knowledge of the suit of Lederman versus Pool or of the judgment rendered by the Court of Appeal.

The present suit is an hypothecary action brought by Harry S. Lederman, plaintiff in the suit of Lederman versus Pool, against the property which his judgment debtor, Pool, owned on June 28, 1919, the day on which the Court of Appeal rendered judgment in the case, but which said Pool sold to McCallum, defendant in this suit, on August 14, 1919, in order to have it seized and sold for the payment of his debt.

There was judgment in the District Court for plaintiff and against defendant, ordering the defendant, McCallum, to deliver and relinquish the said property, describing same, into the hands of the sheriff of Rapides parish in order that it might be sold to satisfy plaintiff's hypothecary debt recovered in the suit of Lederman versus Pool. From this judgment defendant has appealed.

OPINION.

Act 16 of 1910, page 28, provides:

"That judgments rendered in the Courts of Appeal of the state shall become final and executory on the fifteenth calendar day after the rendition * * * provided that in the interval parties in interest shall have the right to apply for rehearing; * * *"

If an application for rehearing is filed within fifteen days as prescribed by the statute, the judgment does not become final until said application is finally disposed of by the court.

The judgment in the suit of Lederman vs. Pool was rendered by the Court of Appeal on June 28, 1919. On July 9, 1919, following, within fifteen days, an application for rehearing was filed by Pool. This application was not finally disposed of until December 5, 1919, on which date and not until then did the said judgment become final and executory.

Whatever force or effect the judgment in this case may have had on the day it was rendered was suspended by the application for rehearing timely filed. A judgment of any court cannot affect the title to real property or act as a mortgage thereon until it becomes final, unless there be some codal provision or legislative act prescribing a method by which it may sooner take effect.

If provision has been made for judgments to become operative between the date of rendition and the date on which they become final the method prescribed must be strictly complied with.

Article 3322 of the Civil Code provides:

"The judicial mortgage takes effect from the day on which the judgment is recorded in the manner hereinafter directed."

Article 3323 provides:

"If there be an appeal from the judgment and it is confirmed, the mortgage relates back to the day when the judgment was recorded."

Article 3323 and 3322 prescribe a method by which a judgment of the District Court may be made effective as a mortgage or otherwise prior to the day on which it is made final by a court of last resort in case of an appeal.

The Code provides that it must be recorded. Until recorded there is no mortgage, and unless recorded a judgment appealed from can have no effect as a mortgage even though it should be affirmed.

Certainly no one will contend that the mere filing of a judgment of district court with the recorder of mortgages would give it effect as a mortgage from the date of such filing in case of an appeal unless such judgment was timely recorded. It is not the filing but the recordation of the judgment which gives it effect as a mortgage. The Code is specific on that point.

The Code, however, makes no provision for the protection of the rights of a litigant who obtains a judgment, as in this case, in an appellate court. Such judgments may be and usually are rendered in a parish other than the one in which the litigation arises, and it does not become a part of the records of the parish where such litigation arose, and there is no provision made in the Code for the re-

moval of the original judgment or for the recordation of a copy thereof. Therefore, if a litigant who obtains a judgment against his adversary in an appellate court is to gain any advantage therefrom between the date of its rendition and the date on which it becomes final, he must find the method to be pursued for gaining such advantage in some special legislative enactment.

We find that the Legislature has provided for just such contingencies. Act 190 of 1918 provides:

"That when any decree has been rendered by any court of appeal or by the Supreme Court, any party to the suit in which said decree may have been rendered shall have the right to demand a copy of the said decree, and to have the same registered in either the mortgage or conveyance office of any parish in this state without regard to whether an application for a writ of certiorari or review, or for a rehearing, has or has not been made."

And, Section 2:

"That the registry of a decree according to the provisions of Section 1 of this act shall operate as a judicial mortgage, or as a recognition of title, or otherwise, according to the terms of said decree, and shall continue to have that effect unless set aside or modified by the final decree in the proceeding."

The purpose of this act is expressed in its title and is perfectly clear. It is to authorize the registry and regulate the effect of decrees of appellate courts in the interim between the date of their rendition and the date they become final. The act is specific in its terms.

It provides a method for giving effect to judgments between the date of rendition and the date on which they become final and it is specific in what shall be done. Any party in interest may obtain a copy of the decree and have the same registered, which registry of such decree

shall operate as a mortgage or as a recognition of title, etc. It is not the filing of the decree but, according to the specific terms of the act, the registry thereof which gives it effect.

Counsel for plaintiff, appellee, contends that Act 215 of 1910 governs in this case. We do not think so. That act is to "require the recorder of mortgages to endorse on all acts importing mortgages or privileges the date, the hour, and the minute of filing, and to make such instruments effectual against third persons from the date of their filing.

The purpose of this act was not to give effect to acts importing mortgages but to give them rank according to the date of their filing. The act contemplates that actual registry shall follow the filing and when timely registered they take effect from the time of the filing.

Counsel cites the case of Godchaux Sugars, Inc., vs. Leon Boudreaux, 153 La. 685, 96 South. 532, in which the court made use of this expression:

"It is apparent, from a mere reading of the statute, that it is not from the date of recording, but from the time of filing, that the instrument becomes effective against third persons."

And the court says:

"The law governing the issues involved in this case is to be found in Act No. 215 of 1910."

The litigation in that case arose over the distribution of certain funds in the hands of the sheriff among creditors, all of whom had recorded judgments; three of them rendered on the same day and recorded on the same day. The issue was as to which of these judgment creditors should receive said fund, and the court, in discussing that issue, made use of the above quoted expression.

We must not lose sight of the fact that the filing with the recorder of mortgages of an act importing a mortgage or lien makes the act filed a part of the archives of his office and that said act must not be removed therefrom, and that the law contemplates that such document shall ultimately be recorded in order to give it effect.

Article 3322 of the Civil Code provides:

"That the judicial mortgage takes effect from the day on which the judgment is recorded."

All that Act 215 of 1910 was intended to do and all that it did was to make it certain that such acts take effect from the very hour and minute of the day on which they are filed; that is, to rank the claims of creditors who file such acts on the same day.

Counsel's construction of the act would bring it into conflict with the provisions of the Code on the subject of registry of judgments. There is no conflict, nor is there any conflict between Act 215 of 1910 and Act 190 of 1918.

To illustrate the purpose of Act 215 of 1910 let us suppose there had been two cases against the defendant Pool in the Court of Appeal and that that court had rendered judgment against him in both cases on the same day; and let us suppose further that the parties at interest had complied with the provisions of Act 190 of 1918 by getting a copy of said judgments and had had them registered in the mortgage records the same day. It might become a question as to which judgment would take rank as a mortgage. The act of 1910 provides for a case like that. Under it the clerk is required to stamp not only the day but the hour and minute of the filing of each document so that there can be no question as to which creditor would have the first lien or mortgage.

In the case at bar the original judgment was carried to a deputy recorder who marked it filed. It was then removed from the office. No note, record or minute of its filing was left in the office of the recorder. The original judgment was finally returned to the recorder's office and recorded on March 23, 1920, and it bears the original filing date of June 28, 1919. We are asked to hold that the effect of the recording of this judgment dates back to June 28, 1919. To do so would have to ignore both the spirit and letter of the law relating to the registry of judgments and disregard the plain and simple provisions of Act 190 of 1918.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be reversed and set aside, and that plaintiff's demand be rejected and his suit dismissed at his cost.

---

## ON APPLICATION FOR REHEARING.

CARVER, J. Counsel for plaintiff very earnestly and very ably contend that the court erred in refusing to hold that, under Act 215 of 1910, the judgment in question took effect on the day it was filed in the clerk's office. That act provides as follows:

"AN ACT to require the recorder of mortgages to endorse on all acts importing mortgages or privileges the date, hour and minute of filing; and to make such instruments effectual against third persons from the date of their filing.

"Section 1. Be it enacted by the General Assembly of the State of Louisiana, That all acts or instruments of writing which import mortgage or privilege shall when deposited with the recorder of mortgages for record be immediately endorsed by him with the date, hour and minute of filing; which endorsement shall be recorded with the registry of such instrument.

"Section 2. Be it further enacted, etc., That all such instruments shall be effective against all persons from the time of their filing.

"Section 3. Be it further enacted, etc., That all laws or parts of laws in conflict herewith be and the same are hereby repealed."

"AN ACT to authorize the registry and regulate the effect of decrees of Appellate Courts in the interim between the date of this rendition and the date when they become final, and to repeal all laws in conflict with the provisions of this act.

"Section 1. Be it enacted by the General Assembly of the State of Louisiana, That when any decree has been rendered by any court of appeal, or by the Supreme Court, any party to the suit in which said decree may have been rendered shall have the right to demand a copy of the said decree, and to have same registered in either the mortgage or conveyance office of any parish in this state without regard to whether an application for a writ of certiorari or review or for a rehearing, has or has not been made.

"Section 2. Be it further enacted, etc., That the registry of a decree according to the provisions of Section 1 of this act shall operate as a judicial mortgage, or as a recognition of title, or otherwise, according to the terms of said decree, and shall continue to have that effect unless set aside or modified by the final decree in the proceeding.

"Section 3. Be it further enacted, etc., That nothing in this act shall be construed to permit a writ of execution of a decree to issue until said decree is final.

"Section 4. Be it further enacted, etc., That all laws or parts of laws in conflict with the provisions of this act be and the same are hereby repealed."

The Legislature must be presumed to have known the distinction between filing an instrument and registering it. As early as 1878 the Supreme Court, in an exhaustive and well-reasoned decision, had pointed out the difference between conveyances and mortgages as to the time of their taking effect—conveyances when they were filed and mortgages when recorded.

State ex rel. vs. Rogillo, 30 La. Ann. 835.

Thirty-two years after this the Legislature passed Act 215 of 1910 placing "all acts or instruments of writing which import mortgage or privilege" on the same footing as conveyances in that regard.

This act had no special reference to decrees of appellate courts, if any reference at all, as to which we express no opinion.

Eight years thereafter Act 190 of 1918 was passed, referring to decrees of appellate courts and to nothing else. In providing in this act that the registry of such a decree should operate as a judicial mortgage, we are not at liberty to presume that the Legislature was ignorant of the distinction between filing and registry and meant that the mere filing of such a decree, either a copy or the original, should so operate.

If the act of 1910 applies to decrees of appellate courts, and if, for that reason, it conflicts with the act of 1918, the latter must govern because the last expression of the legislative will. Furthermore, the concluding section of the act of 1918 repeals all conflicting laws.

Rehearing refused.