No. 9824
Orleans

----

## WHITNEY-CENTRAL NATIONAL BANK v. CUNEO AND FIDELITY & DEPOSIT COMPANY OF MD.

(July 5, 1927. Opinion and Decree.)
(October 3, 1927. Rehearing Refused.)

----

*(Syllabus by the Court)*

1. **Louisiana Digest—Notaries—Par. 8.**
When a notary public executes a chattel mortgage on one side and a real estate mortgage on the other side of the same

sheet of paper, it is his duty to call the attention of the Recorder of Mortgages specifically to the two Acts and to pay for filing both Acts the legal fees.

2. **Louisiana Digest—Notaries—Par. 12, 13.**
Where the notary fails in above duties and the Recorder of Mortgages does not inscribe the real estate mortgage on his records and an innocent third party is damaged thereby, the notary and his surety are liable.

3. **Louisiana Digest—Mortgages—Par. 73.**
The purpose of Act 215 of 1910 was to give mortgages rank according to the date of their filing. The Act contemplates that actual inscription shall follow the filing and when timely inscribed, they take effect from the time of filing.

4. **Louisiana Digest—Laws—Par. 14.**
If this Act, No. 215 of 1910, is to be construed so that mortgages shall affect the property of third persons before they are recorded in the parish where the property is situated, then the Act is unconstitutional.

Appeal from Civil District Court, Division "B". Hon. Mark M. Boatner, Judge.

Action by Whitney-Central National Bank against Alphonse J. Cuneo and Fidelity & Deposit Co. of Maryland.

There was judgment for defendant, and plaintiff appealed.

Judgment reversed.

Milling, Godchaux, Saal & Milling and Eugene Saunders, of New Orleans, attorneys for plaintiff, appellant.

Jas. B. Rosser, Jr., of New Orleans, attorney for appellee.

JONES, J. Plaintiff, as the holder of certain mortgage notes, sues the surety and the notary before whom was executed a mortgage securing the payment of the notes.

The basis of liability is that the defendant in ciolation of his duty failed to cause the mortgage to be recorded until a year and a half after its execution and as a result of his failure in this respect the mortgaged property was sold by the mortgagor to a third person and petitioner was thereby deprived of its security.

The defense is that the act of mortgage was promptly filed in the mortgage office and the notary did all that was required of him. The Recorder of Mortgages was originally called in warranty but was afterwards dismissed from the suit.

There was judgment for defendant and plaintiff has appealed.

The evidence shows that plaintiff is the holder in due course for value of five notes in the amount of fifty dollars each, executed by one Emmet O'Neill on April 27, 1922. To secure the payment of these notes O'Neill executed a chattel mortgage before the defendant, Alphonse J. Cuneo, a notary public for the Parish of Orleans.

As additional security for the payment of the notes, one A. L. Cummings executed before the defendant on the same day, April 27, 1922, a mortgage on certain real property.

The record contains a certified copy of this mortgage, which shows that the chattel mortgage was executed on a printed form on one side of a single sheet of paper and on the reverse of this printed sheet, but as an entirely separate act, was executed the mortgage of the real estate. In other words, both acts were written on a single sheet of paper; on one side was the chattel mortgage, on the other side, the mortgage of real estate. At the bottom of the side on which appeared the chattel mortgage were written the words "READ OVER".

On May 1, 1922, this single sheet was deposited with the Recorder of Mortgages for the Parish of Orleans, and the sum of fifty cents was paid the recorder to cover the cost of recordation. The chattel mortgage was recorded on May 1, 1922, in Book 1271, at page 76, but the mortgage of real estate was not then inscribed in the records.

On October 13, 1923, the document was again deposited and the sum of one dollar and fifty cents was paid to cover the cost of recordation. The mortgage of real estate was then duly recorded as of date October 13, 1923, in Book 1280, at page 205.

On the back of the chattel mortgage, under the real estate mortgage, are found the following endorsement on the original:

"Recorded May 1st, 1922, Mortgages 50c, A. C. W.  9:15 A. M.
"Recorded in Mortgage Office Book 1271, fo. 76, New Orleans, La., 5/1/1922. Signed, Robt. Scott, D. R.
"Recorded, Oct. 13, 1923, Mortgages $1.50. 11:15 A. M.
"Recorded in Mortgage Office Book 1280, fo. 205, New Orleans, 10/13/1922. Signed, Robt. Scott, D. R."

Between May 1, 1922, the date on which the chattel mortgage was recorded, and October 13, 1923, the date on which the real estate mortgage was recorded, A. L. Cummings, the mortgagor, sold the mortgaged property without declaring the existence of the unrecorded mortgage above described.

Defendant's clerk testified that he called the attention of the cashier of the Mortgage Office to the writing on the back of the document when he carried it to the Mortgage Office on May 1, 1922, and asked him the charge and thereupon paid the amount demanded, namely fifty cents, and left it with the cashier.

The notary, who had been acting as such in this city for seventeen years, testified that the Recorder of Mortgages had a file or box in his office for every notary in New Orleans and that it was the custom of the Recorder to place, whenever the document left for recordation contained any error, the document without recording it, in the notary's box with a note attached calling attention to the error and asking the notary to explain; that in this case no such step had been taken and he believed the recordation O. K., until his attention was called to the error by plaintiff's attorney on October 13, 1923, when he paid $1.50 additional and had the real estate mortgage recorded; that he had written the words "Read Over" at the bottom of the original chattel mortgage, and had told his clerk to call the attention of the cashier to these words.

On cross-examination he said that he knew the charge for filing a chattel mortgage was fifty cents and the charge for filing a real estate mortgage $1.50; that he did not recall the exact amount of money given the clerk that morning to file these two mortgages, but gave him sufficient money to pay for these and other acts and other certificates. The clerk, though he had been filing papers for the notary for ten years, said on rebuttal, that he did not know the cost of filing any document, that he always asked and paid the amount demanded.

The deputy cashier testified that he did not recollect the filing of the document.

Upon maturity of the notes plaintiff filed suit against the maker and endorsers and secured a judgment for the amount of the notes, interest and costs and twenty per cent attorney's fees, with recognition of the real estate mortgage and the chattel mortgage. When he tried to execute this judgment plaintiff discovered that the automobile was held by a garageman in Hammond, La., as security for a storage and

repair bill in excess of the value of the car, and that the real estate had been sold to the prejudice of plaintiff's mortgage and this suit was brought to recover from defendant the amount which plaintiff could have realized from the property had the mortgage been timely recorded.

Although Article 3370 of the Civil Code makes it the duty of all notaries to cause to be recorded without delay all mortgages executed by them, it is contended that a mortgage is in contemplation of law recorded when it is deposited with the recorder of mortgages and that defendant, therefore, complied with his duty when he paid fifty cents and deposited the above-described paper with the Recorder of Mortgages on May 1, 1922, and that the mortgage of real estate was effective from that date notwithstanding the fact that it was not actually inscribed in the mortgage records.

Prior to 1910 a mortgage was not effective as against third persons until it had been actually recorded; that is, copied into the mortgage book, but the argument is made that under the provisions of Act 215 of 1910 a mortgage was made effective against third persons from the date of its deposit, even though it was never actually recorded.

Act 215 of 1910 provides:

"That all acts or instruments of writing which import mortgage or privilege shall, when deposited with the Recorder of Mortgages for record, be immediately indorsed by him with the date, hour and minute of filing; which indorsement shall be recorded with the registry of such instrument. "* * * All such instruments shall be effective against all persons from the time of their filing."

By Act 136 of 1880 the Recorder of Mortgages is required to exact a charge of one dollar and fifty cents ($1.50) for recording a mortgage of real estate, and under Act 198 of 1918 the fee for recording a chattel mortgage is fixed at fifty cents. When the document herein under consideration was deposited in the Mortgage Office the sum of fifty cents was paid to cover the cost of filing. The law fixed the charges for recording these acts; defendant was charged with knowledge of these laws; and neither defendant nor the Recorder of Mortgages had the authority to dispense with the payment of these legally imposed charges.

If the attention of the cashier had been called specifically to the fact that two separate acts had been written on one piece of paper, a very unusual and a very careless method of preparing notarial acts, and if the Recorder had exacted the payment of the fees fixed by law for the recording of two acts, but had failed to actually inscribe both acts in the record, there would possibly be reason for holding that the Recorder had been careless, but inasmuch as the Recorder treated the document at all times as being nothing more than a chattel mortgage, it seems apparent that he never realized that defendant was attempting to file a mortgage of real estate with him.

The document was certainly one which would tend to confuse the Recorder and defendant, knowing this fact, should have made a special effort to see that the Recorder was not misled.

The law requires the Recorder of Mortgages to keep a separate book for the inscription of chattel mortgages. When this document was returned to the defendant it contained the certificate of the Recorder of Mortgages to the effect that but one inscription had been made and one charge paid. This was notice to the defendant that both mortgages had not been recorded and then he should have caused the mortgage to be recorded.

Furthermore, defendant only paid fifty cents to record this entire document and he must have known that he had not paid to record the real estate mortgage, as he swears he knew that the Recorder always charged $1.50 for a real estate mortgage.

The Recorder of Mortgages is an agent of the State to perform the duties imposed upon him, upon receiving the fees stipulated by law. The fees do not redound to his benefit but to the benefit of the State. Under these circumstances the Recorder of Mortgages is vested with no discretion as to whether or not he will charge the fees imposed by law, it being his mandatory duty to exact payment of the legal charges; and he has no authority to perform his duties without exacting payment of the legal charges therefor. If the Recorder of Mortgages received the fees fixed by the law, it might well be said that he had discretion as to extending credit or serving without compensation, but inasmuch as he is not the beneficiary of these funds, he is vested with no discretion whatever.

As to the fact that the payment of the fee fixed by law is a necessary prerequisite to the filing of a document, the Supreme Court of Indiana in the case of State vs. Chicago & E. I. R. Company, 43 N. E. 226, used the following language:

"The rule may be asserted that, where the statute provides that the filing fee shall be paid in advance of the filing of the document, and where the money therefor does not, under the law, go to the officer with whom the same is required to be filed, as his own remuneration, but goes into the public treasury for the benefit of the State, as it does in accordance with the requirements of the statute in question, the officer must be considered (at least, in discharge of the duty enjoined upon him) to collect the fee in advance for the services rendered by the State through him, as the agent of the latter; and, as such, he is not authorized to file the papers or articles presented and required to be filed, although they may be left at his office or in his custody for such purpose, until the fee is first paid; and in consideration of law, they cannot be held or deemed to be filed until there is a compliance with this requisite condition. Under such circumstances the law is the letter of the officer's agency, and he has no warrant to waive the advance payment of the fee."

And to the same effect is the decision of the Court of last resort in California in the case of City St. Imp. Co. vs. Babcock, 68 Pac. 584, wherein the court said:

"Originally the filing of a paper consisted in having the proper officer put it upon the stringfilum—on which the other papers in the proceeding were placed. In modern days it is usually held that a paper is filed on the part of the party who is required to file it when he has presented it at the proper office and left it with the person in charge thereof (Tregambo vs. Mining Co., 57 Cal., 501), and paid the fees for filing if any are required (Boyd vs. Burrell, 60 Cal. 280). The subsequent omission of the officer to make any indorsement thereon will not prejudice his rights."

If the deposit of a paper constitutes the filing of everything thereon the Recorder of Mortgages must determine at his peril whether or not any writing appearing on the paper filed with him, not contained within the act which he has been paid to record, should be recorded. The Recorder could not refuse to accept a paper containing an act of mortgage or chattel mortgage because it also contained other writing and it would impose a great burden upon the Recorder of Mortgages to require him to examine every document coming into his office to determine whether or not anything beyond the particular document, which he has been paid to record should also be recorded in his records.

C. C. Art. 3342 provides that mortgages are only allowed to prejudice third persons when they have been publicly inscribed on records kept for that purpose.

We, therefore, conclude that the real estate mortgage was not, in contemplation of law, filed with the Recorder of Mortgages on May 1, 1922, and that this being the case, it had no effect even if Act 215 of 1910 be construed as otherwise applicable to the facts of this case.

However, we do not believe defendants' construction of that act is correct for the following reasons:

The obligation of the notary is set forth in Article 3370 of the Revised Civil Code in the following language:

"It shall be the duty of notaries, and other public officers acting as such, to cause to be recorded without delay, all acts creating mortgages, which shall be executed by them, whether such mortgages be conventional or legal."

The language of this article is practically the same as that of Article 3329, R. C. C., which provides that mortgages shall have effect among creditors only from the time of recording, and in construing this latter article, the courts have consistently held that that the word "recorded" meant actually inscribed in the mortgage book, the mere filing, unlike conveyances, being insufficient. The leading case on that point is State Ex Rel. Slocumb vs. Sheriff, et al., 30 La. Ann. 833, in which case the court said:

"The real and only question at issue here is whether or not the filing of the act of mortgage in the Recorder's Office has the same effect as the transcribing or recording of the act in the book of mortgages. We have been referred to the case of Payne vs. Pavey, 29 La. Ann. 116, decided by us at the last term in New Orleans, as conclusive of the question. That case only determined the effect of the filing of a conveyance of lands in the office of registry, and it was correctly held under the positive and unequivocal provisions of the Civil Code that the conveyance took effect as to third persons from the date of filing in the proper office, although not actually recorded or transcribed in the

books until long afterwards, and we expressly declined in that case to express any opinion as to whether the same rule prevailed in regard to mortgages. It may be, and indeed is, argued that there is no good reason for a distinction, and that the same rule should apply to both. In the Pavey case we said what we have not occasion to repeat, that 'the laws of registry are arbitrary,' and that in many cases this Court has considered itself bound to refuse relief, because 'ita lex scripta est'. However arbitrary the distinction may seem, and in fact is, the provisions of the law in regard to the time from which sales and mortgages shall take effect against third persons are essentially different. As we held in the Pavey case, conveyances take effect against third persons by the positive and express terms of the law from the time they are deposited and filed for registry in the proper office. In regard to mortgages which are stricti juris on the other hand, the Civil Code, Art. 3329, provides in express terms that 'among creditors the mortgage whether conventional, legal, or judicial, has force only from the time of recording it in the manner hereafter directed'; Article 3342, 'that these mortgages are only allowed to prejudice third persons when they have been publicly inscribed on records kept for that purpose, and in the manner hereafter directed'; Article 3345, that 'all mortgages, whether conventional, legal, or judicial, are required to be recorded in the manner hereafter provided'; and Article 3348, that 'any person entitled to a mortgage or privilege on the property of another person must cause the evidence of such mortgage or privilege to be recorded in the mortgage book of the parish where the property is situated'. We here find not that mortgages like conveyances take effect from the time they are deposited or filed in the proper office, but only from 'the time they are' actually 'inscribed' 'on records kept for that purpose,' and that the recording must be in the mortgage book of the parish where the property is situated; and so it has often been held that the registry of a mortgage in the book of conveyances though in the proper office is insufficient and without effect as to third persons, the only exception being where it appears that only one book of record is kept, in which both sales and mortgages are registered indifferently. See

Robertson vs. Brown, 5 La. Ann. 154; Carpenter vs. Allen, 16 La. Ann. 435; Verges vs. Prejean, 24 La. Ann. 78, and authorities cited."

Until Act 215 of 1910 was passed the law was apparently well settled that the use of the word "record" in a statute meant actual inscription, and, under this jurisprudence, Article 3370, R. C. C., could only be construed to require a notary to cause a mortgage to be actually inscribed in the mortgage records. The only doubt that could possibly arise on this point would result from the effect to be given Act 215 of 1910. It should be noted, however, that Act 215 of 1910 does not, either expressly or impliedly, purport to affect the provisions of Art. 3370 of the Civil Code with reference to the duties of notaries public. It deals only with the legal effect to be given the filing of acts of mortgage for recordation and does not even attempt to make filing equivalent to or synonymous with recordation. The meaning of the words remain the same and, hence, the obligation of notaries was not affected by that law.

That Act 215 of 1910 was never intended to apply to a situation such as is herein presented was recognized by the Court of Appeal for the Second Circuit in the case of Lederman vs. McCallum, 1 La. App. 552. In that case a judgment had been filed for record on June 28, 1919, but not recorded until March 23, 1920. The judgment was not recorded in June, 1919, for the reason that a rehearing had been timely applied for and most of the case is taken up with a consideration of the effect of Act 190 of 1918, but, in dealing with Act 215 of 1910, the court used the following language:

"Counsel for plaintiff, appellee, contends that Act 215 of 1910 governs in this case. We do not think so. That act is to 'require the Recorder of Mortgages to endorse on all acts importing mortgages or privileges the date, the hour, and the minute of filing, and to make such instruments effectual against third persons from the date of their filing.

"The purpose of this act was not to give effect to acts importing mortgages but to give them rank according to the date of their filing. The act contemplates that actual registry shall follow the filing and when timely registered they take effect from the time of the filing."

*    *    *    *

"All that Act 215 of 1910 was intended to do and all that it did was to make it certain that such acts take effect from the very hour and minute of the day on which they are filed; that is, to rank the claims of creditors who file such acts on the same day."

This same court in the case of Charrier vs. Greenlaw Truck & Tractor Company, 2 La. App. 622, again construed Act 215 of 1910 as not, under all conditions and circumstances, making the filing of a document the equivalent of recording it. In that case a chattel mortgage was filed for record, but, through error of the clerk, the name of the notary was inserted as mortgagor instead of the name of the true mortgagor and, hence, as recorder, the mortgage did not constitute notice of a mortgage against the mortgagor. The property subject to the chattel mortgage was sold and the person in whose favor the chattel mortgage had been granted attempted to enforce the chattel mortgage against the property in the hands of the purchaser, and in support of his right to do so contended that the filing of the chattel mortgage under Act 215 of 1910 made it effective against third persons without regard to whether or not it was subsequently recorded correctly. The court held that Act 215 of 1910 should not be so construed.

"In our opinion Act 215 of 1910 is one of a system of laws, the purpose of which is to provide a means whereby anyone interested in a particular piece of property subject to the system can and should show its title and mortgage condition on the

public records and whereby anyone intending to become interested in it can ascertain that condition from the records; whether this latter consults it or not, he is bound by it on the one hand and can rely on it on the other.

"In view of this purpose, can we say that a mortgagee is under no obligation to do more than deposit his mortgage with the proper officer, and that by merely doing so he preserves his right, although that officer may fail to record it or may record it in such a way as to give false and misleading information instead of true information?

"It is true the law declares that the act shall take effect from the time it is filed, but it says this in contemplation of obedience to its direction that the act shall be recorded, of course, meaning that it shall be recorded correctly.

\* \* \* \*

"Article 186 of the Constitution of 1898 was substantially the same. It provides:

" 'No mortgage or privilege on immovable property shall affect third persons, unless recorded or registered in the parish where the property is situated, in the manner and within the time as is now or may be prescribed by law.'

"In view of this constitutional provision, the one in effect when Act 215 of 1910 was passed, it is questionable whether the Legislature could validly make mortgages on immovable property effective against third persons merely because filed though not recorded or improperly recorded.

"We express no opinion as to this, because the question of constitutionality is not raised and the case does not involve immovable property. We merely advert to it to remark that if possible Act 215 of 1910 should be so construed as not to violate the constitutional provision."

The court expressed quite convincingly the reasons why, in its opinion, the Legislature never intended that Act 215 should receive the construction contended for therein, saying:

"To hold otherwise would be to violate the equitable maxim that where one of two innocent parties must suffer the loss should rather fall on him by whose fault or negligence it happened.

"It would be also to defeat instead of effectuate the purpose of the registry laws, thus violating what the Civil Code declares is the most effectual way of discovering the true meaning of a law, and would convert what the lawmaker designed to be a reliable guide for the most important transactions into a trap not only for the unwary but even for the most prudent and diligent."

If Act 215 of 1910 declares that mortgages shall be effective from the date of filing, irrespective of whether or not they are subsequently recorded, we hold that this act is unconstitutional as being violative of the Constitutions of the State of Louisiana.

At the time this Act was adopted, the Constitution of 1898 was in effect and this Constitution contains the provision quoted above.

The Constitution of 1913 contains the same provision under the same article number.

The Constitution of 1921 provides, Article 19, Section 19:

"No mortgage or privilege on immovable property, or debt for which preference may be granted by law, shall affect third persons unless recorded or registered in the parish where the property is situated, in the manner and within the time prescribed by law \* \* \* \* ."

At the time these provisions were inserted in the various Constitutions the law of Louisiana, as we have already pointed out, was apparently well settled that the word "recordation" means the actual inscription in the mortgage records. It must be assumed, therefore, that the framers of the Constitution used that word in the sense in which its meaning had become well understood and established. The language in the Constitutions is practically

the same as the language of the Civil Code which, as above stated, had been construed as requiring the actual recordation of a mortgage. Inasmuch, therefore, as the Constitutions of 1898, 1913 and 1921 require that a mortgage in order to affect third persons be actually inscribed in the mortgage records, we conclude that an act of the Legislature making mortgages effective from the date of filing without regard to whether or not they were actually recorded is violative of these constitutional provisions, and, hence, unconstitutional.

For above reasons, the judgment is reversed and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, the Whitney-Central National Bank, and against defendants, A. J. Cuneo and the Fidelity & Deposit Company of Maryland in solido in the sum of Three hundred thirty-three and 10/100 ($333.10) Dollars with eight per cent interest on Two hundred fifty ($250.00) Dollars from April 27th, 1922, until paid and legal interest on the balance from March 19th, 1923, until paid.