154 So.2d 433

Lee KINNEBREW et al.

v.

TRI–CON PRODUCTION CORPORATION
et al.

No. 46494.

June 4, 1963.

Rehearing Denied June 28, 1963.

Robert G. Pugh, Shreveport, for relators.

Stephens & Allen, Shreveport, for respondents.

HAMITER, Justice.

Lee Kinnebrew and G. E. Joyce, on July 30, 1960, sold to Tri-Con Production

Corporation (referred to hereinafter as Tri-Con) certain oil, gas and mineral leases affecting lands located in the Parish of Caddo; and as part of the consideration for the sale they received a promissory note of the vendee for $3,000, the payment of which was secured by a vendor's lien and special mortgage on the leases.

On August 4, 1960 Tri-Con conveyed the leases to its president, Gordon M. LeBlanc, who, on the next day, transferred them to Mrs. Claire Benz-Stoddard Falkin. These assignments contained no reference to the lien and mortgage retained by Kinnebrew and Joyce.

All three conveyance instruments were filed for record with the Clerk of Court of Caddo Parish on August 5, 1960; and they were endorsed by him, as to the hour and minute of filing on such date, as follows: Kinnebrew and Joyce to Tri-Con at 3:37 P.M.; Tri-Con to LeBlanc at 3:40 P.M.; LeBlanc to Mrs. Falkin at 3:42 P. M.

When Tri-Con failed to pay the mortgage indebtedness Kinnebrew and Joyce instituted the instant suit via ordinaria against it. They prayed (among other things) that their lien and mortgage on the conveyed leases be recognized and maintained. Subsequently, Mrs. Falkin (joined by her husband) intervened in the suit, she asserting ownership of the leases free and clear of all encumbrances. (By way of third party actions additional claims between these and

other parties were litigated, but they are no longer involved.)

Following a trial of the merits the district court rendered judgment rejecting plaintiffs' demand for the maintenance of their lien and mortgage on the leases acquired by Mrs. Falkin.

On appeal to the Second Circuit Court of Appeal the judgment was reversed, the court decreeing that such encumbrances be recognized and enforced. See 147 So 2d 21.

At the instance of the intervenor, Mrs. Falkin, we granted certiorari.

Mrs. Falkin's assertion that her leases are free and clear of plaintiffs' lien and mortgage is grounded on the contention that, although the three instruments above referred to (through which she acquired title) were filed with and endorsed by the Clerk of Court in proper chronological order, the conveyance by plaintiffs to Tri-Con (which stipulated the lien and special mortgage) was not actually inscribed in the mortgage book until sometime after the filing date (August 5) of her assignment. In this connection she relies primarily on certain codal articles and decisions in our jurisprudence (hereinafter discussed) which announce that a mortgage can have effect as to third persons only from the date of its inscription.

In opposition, the plaintiffs urge that Act 215 of 1910 (LRS 9:5141) rendered

inappropriate the authorities relied on by Mrs. Falkin, because therein the Legislature declared that mortgages and privileges shall be effective against all persons from the time of their filing. They interpret such statute to mean that no longer must a mortgage be inscribed to have effect; rather, it becomes effective as to third persons from the moment of the filing thereof, irrespective of whether or not it is ever actually inscribed. Alternatively, they argue that, if it must be inscribed, the effectiveness of the inscription dates back or reverts to the moment of the mortgage's filing.

Seemingly, the Court of Appeal accepted plaintiffs interpretation of Act 215 of 1910 (LRS 9:5141), for it stated: " * * * *Inscription in the book of mortgages is not required in order to make the instrument effective against all persons.* It is conceded the Kinnebrew-Joyce assignment was in all respects properly filed or deposited with the recorder of mortgages and endorsed with the date, hour and minute of filing. Under the very terms of the statute in order to preserve their privilege and mortgage, Kinnebrew and Joyce were not required to do more.

"Reference is made by counsel for the appellees to certain decisions which expressly appear to hold that Act 215 of 1910 contemplates and requires inscription of the instrument in the book of mortgages before third persons are affected. [Here decisions are cited] *We are not in accord with these holdings insofar as they appear to construe the statute to require in addition to filing, an inscription in the book of mortgages in order to be effective against all persons. * * *"* (Italics ours)

It was mainly because of the emphasized statements quoted above, the correctness of which was somewhat doubted, that we issued certiorari. Now, after our further study of the case, we find (even from the opinion of the Court of Appeal) that such statements were gratuitously made, and not necessary for a determination of the litigation, inasmuch as the lien and mortgage sought to be enforced by these plaintiffs *were actually inscribed.* In other words the only legal issue properly before the Court of Appeal (and now before us) was whether the actual inscription of such encumbrances became effective from the time of the filing with the Clerk of Court.

Before discussing this legal issue we deem it appropriate to settle an apparent conflict between the litigants relative to the date on which plaintiffs' lien and mortgage were actually inscribed in the mortgage book. In the brief of Mrs. Falkin it is suggested that the inscription did not occur until . "after the lapse of over a month, when a title opinion was rendered on September 2, 1960 * * *." But we find no evidence to support this suggestion. All that the record reflects on this point

is that the inscription appears as the last document in the mortgage book in which it is contained, and that the instrument immediately preceding it bears a recordation date of August 8, 1960. Neither the Clerk of Court nor anyone of his office employees was called as a witness to determine exactly when the inscription occurred. Under these circumstances we must assume and conclude as a fact that it was actually inscribed on August 8, 1960 (three days after the filing thereof) or, at the fartherest, within a day or two later. Incidentally, we notice that the instrument was filed in mid-afternoon of a Friday (August 5, 1960 at 3:37 P.M.). Possibly this late filing on Friday accounted for some of the several days' delay in the inscribing.

Adverting now to the legal issue involved, it is well to consider the historical background of Act 215 of 1910 (on which plaintiffs rely) in determining its purpose and effect.

Article 3314 of the Louisiana Civil Code of 1825 provided: "Conventional mortgage is acquired only by consent of the parties; and judicial and legal mortgages, only by the effect of a judgment, or by operation of law.

"But these mortgages are only allowed to prejudice third persons, when they have been publicly inscribed on records kept for that purpose, and in the manner hereafter directed." While no mention was made in the quoted provisions as to the effective date of the inscription, Articles 3319 and 3320 of that code declared that if the inscribing occurred within a specified number of days the instrument would affect third persons from the date on which it was executed; if otherwise, such effectiveness would commence only from the day of the inscription. Thus, a timely inscription gave the mortgage a retroactive effect —one that was recognized by all of the early cases in our jurisprudence.

By Act 53 of 1865, entitled "Relative to Recorders" and which specifically dealt with both mortgages and conveyances, the Legislature declared (in Sections 13 and 14) that when notarial acts are *deposited* in the office of the parish recorder they form a part of the archives of his office; that the recorder must endorse the time each instrument is received by him on the back thereof; and that "such act[s] shall have effect against third persons only from the date of their being *deposited in the office of the Parish Recorder.*" Additionally, the statute repealed all laws contrary to and inconsistent with its provisions.

It would seem, therefore, that Act 53 of 1865 superceded the above mentioned Articles 3319 and 3320 of the 1825 Civil Code insofar as the effect of filing and inscribing of mortgages was concerned. And this conclusion becomes even more evident when

it is noticed that such articles were not carried into the Revised Civil Code of 1870. Instead, incorporated in the latter code, as part of a group of articles under the heading "Of Registry" (2251–2266), were the discussed provisions of the 1865 statute. (This group was a composite of the registry laws and also those laws pertaining to the duty of notaries to deposit their acts with the recorder.)

Thus, in such group, Article 2254 (as did the 1865 statute) provided that the recorder should endorse on acts the time when received by him and that "such acts shall have effect against third persons only from the date of *their being deposited* in the office of the parish recorders"; Article 2264 declared that "No notarial act concerning immovable property shall have any effect against third persons, until the same *shall have been deposited* in the office of the parish recorder, or register of conveyances * * *"; and Article 2266 stated that the recording of all sales, *contracts and judgments* affecting immovable property "shall have effect from the time when the act *is deposited* in the proper office, and indorsed by the proper officer."

However, either through inadvertence or design (we need not now decide which), the above quoted Article 3314 of the Code of 1825 became Article 3342 of the Revised Civil Code of 1870. And one of its provisions is that mortgages prejudice third

persons only when they have been publicly *inscribed* on records kept for that purpose.

For some time after the adoption of the Civil Code of 1870 there was much confusion in the jurisprudence of this court as to which codal articles were applicable to the registration of mortgages. Some decisions were to the effect that the articles contained in the group under the heading "Of Registry" (2251–2266) governed; in other cases Article 3342 was applied, the court reasoning that it specifically referred to the inscription of mortgages and was contained in a chapter so entitled. Rochereau and Company v. Colomb, 27 La.Ann. 337; State ex rel. Slocomb v. Rogillio et al., 30 La.Ann. 833; Gallaugher v. Hebrew Congregation, 35 La.Ann. 829; Givanovitch v. Hebrew Congregation, 36 La.Ann. 272 and Way v. Levy et al., 41 La.Ann. 447, 6 So. 661. As to conveyances, on the other hand, the jurisprudence then (as it is now) uniformly was to the effect that the general registry articles (2251–2266) were applicable and that the instruments were effective against third persons immediately upon their being deposited with the recorder. Payne and Company v. Pavey, 29 La. Ann. 116, 117; Schneidau v. New Orleans Land Company, 132 La. 264, 61 So. 225; and Wood Preserving Corporation v. Mitchell Tie and Lumber Company, Inc. (La.App.), 167 So. 122.

With the jurisprudence in the described condition the Legislature adopted Act 215

of 1910 which, as its title stated, was "To require, the recorder of mortgages to indorse on all acts importing mortgages or privileges the date, hour and minute of filing; and to make such instruments effectual against third persons from the date of their filing." The body thereof recited: "Section 1. Be it enacted by the General Assembly of the State of Louisiana, That all acts or instruments of writing which import mortgage or privilege shall when deposited with the recorder of mortgages for record be immediately indorsed by him with the date, hour and minute of filing; which indorsement shall be recorded with the registry of such instrument.

"Section 2. Be it further enacted, etc., That all such instruments shall be effected [effective] against all persons from the time of their filing.

"Section 3. Be it further enacted, etc., That all laws or parts of laws in conflict herewith be and the same are hereby repealed." (Brackets ours)

▇ After a careful study of the quoted provisions, as well as a consideration of the historical background thereof, we are convinced that the Legislature by such statute (which specifically refers to mortgages and privileges) intended to eliminate the above mentioned confusion in the jurisprudence and to place mortgages and privileges on the same footing as conveyances with reference to their registry—

that is, to make them effective against third persons from and after the time of their being deposited with the recorder (at least, if the acts thereafter are duly and timely inscribed). In plain, unambiguous language the statute provides that instruments of such nature shall prejudice third persons *from the time of their filing* (not inscription); and it expressly repeals all laws in conflict with the provisions thereof.

Certain other Louisiana statutes, which might be read in pari materia with Act 215 of 1910, appear to sustain our announced conclusion. Thus, the chattel mortgage act (originally No. 198 of 1918, now LRS 9:5351 et seq.) contains the almost identical requirement that the recorder endorse on the mortgage instrument the date, hour and minute of its filing; and the further language thereof can be interpreted in no other light than as giving force and effect to the chattel mortgage as of the time of its being deposited with the recorder (see particularly LRS 9:5354). Again, in 1950 the Legislature sought to make the protection afforded by the registry laws available to mineral purchasers and lessees, and to that end it adopted Act 7 of the Second Extra Session, Section 1 of which (LRS 9:2721) recognized the effectiveness of instruments (including mortgages) as of the date of the filing by providing: "Be it enacted by the Legislature of Louisiana, That no sale, contract, counter letter, lien, mort-

gage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and *until filed* for registry in the office of the Parish Recorder of the parish where the land or immovable is situated; * * *." (The statute then defines third persons, and it particularly refers to mineral purchasers and lessees.)

Mrs. Falkin has suggested that the sole purpose of Act 215 of 1910 was to effect a ranking of mortgages filed on the same day—that is, to amend or repeal Revised Civil Code Article 3358 which states that all mortgages filed on the same day shall be of equal rank. The suggestion seems to be supported by certain language found in the original opinion of Lederman v. McCallum, 1 La.App. 552, a case cited by intervenor. However, that opinion, as well as a supplemental opinion rendered in refusing a rehearing, clearly discloses that such language was wholly unnecessary for determining the litigation.

Undoubtedly, the 1910 statute does provide for ranking of mortgages filed on the same day as of the hour and minute of their filing. But obviously the Legislature did not intend to thus limit the effect thereof. If that were the intention the repealing clause would have specifically referred to only Revised Civil Code Article 3358, which relates to concurrent mortgages inscribed on the same day, instead of reciting (as it does) that all conflicting laws are repealed.

Besides, a construction that Act 215 of 1910 applies only to the ranking of mortgages filed on the same day, and that generally the time of actual inscription is the governing date as to third persons, could lead to impractical results. For example, if land is conveyed with the vendor retaining a lien and mortgage timely filed, and the vendee sells the property for a cash consideration shortly thereafter on the same day (the act evidencing the latter sale being immediately deposited in the proper office), the time required for and consumed in the inscribing of such encumbrances might well serve to defeat them. It is common knowledge that in many instances there are delays of days and even weeks in accomplishing mortgage inscriptions, the delays not being caused by the neglect of the mortgagees or of the recorders but by legal holidays, and by large volumes of work or illnesses in the recorders' offices.

We have studied the many other cases relied on by Mrs. Falkin, some of which do express views that are in opposition to the conclusion we have reached herein. But most of those views constitute obiter dicta only. Too, a number of the cited decisions were rendered by the Courts of

Appeal; and they, while persuasive, are not controlling here.

Although we deem it unnecessary to discuss each of the referred to cases in detail we take particular note of Opelousas Finance Company v. Reddell et al., 9 La. App. 720, 119 So. 770, because in our granting the writ herein it was thought that the holdings of the two causes conflicted, especially in view of the following language contained in the Opelousas case: "Another question logically suggests itself, and that is, Suppose, although properly indorsed, would an act of mortgage which never was recorded be effective against third persons? Obviously it would not, for registry is sacramental under the provisions of the Civil Code to render an act of mortgage effective against third persons." But a careful reading of the opinion in the Opelousas case makes it abundantly clear that the quoted language was obiter dicta, the holding of the court having been based squarely on a finding that the instrument involved was not properly endorsed when filed.

Intervenor has argued here that the Court of Appeal, in interpreting Act 215 of 1910 to mean that no inscription is necessary in order to affect third persons, has rendered the statute unconstitutional, she invoking Article XIX, Section 19 of the Louisiana Constitution which provides in part: "No mortgage or privilege on immovable property, or debt for which preference may be granted by law, shall affect third persons unless recorded or registered in the parish where the property is situated, in the manner and within the time prescribed by law, * * *." The assailed interpretation given the statute by the Court of Appeal was unnecessary for a decision of this litigation (as pointed out above), because plaintiffs' lien and mortgage were actually inscribed in the mortgage book within a few days after their deposit with the Clerk of Court. The inscription, in other words, was duly and timely made. Accordingly, the effectiveness thereof dated or reverted to the day, hour and minute of the filing; and it follows that the encumbrances were valid and binding against the leases acquired by intervenor, Mrs. Falkin.

We express no opinion now regarding the result that should be reached if the inscription of plaintiffs' lien and mortgage had never occurred or had been excessively delayed. In the future when a case comes before us involving a circumstance of that nature the issue thereby presented can then be determined.

For the reasons assigned the decree of the Court of Appeal is affirmed at the costs of intervenor.