WEIMER, Justice.
 
 [1]
 

 |, This court granted plaintiffs writ application to determine whether an enforceable judicial mortgage existed when the clerk of court received a money judgment for recordation, but admittedly processed the judgment as a conveyance document rather than as a mortgage document within the clerk’s computerized immovable property records system. Plaintiff sought to enforce the judgment against defendant purchasers who bought immovable property consisting of a home from the judgment debtor. The defendant purchasers bought this immovable property after the judgment was processed as a conveyance document, rather than as a mortgage docu
 
 *61
 
 ment. Finding that this issue is squarely addressed by LSA-C.C. art. 3838 (which requires that a mortgage be recorded in the mortgage records to affect third persons), we affirm the decision of the court of appeal finding that the money [¿judgment cannot be enforced as a judicial mortgage against the defendant purchasers based on the facts of this case.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 On August 19, 2005, a North Carolina court awarded Hans Wede a money judgment against Rodney Whitney, Jr. and Niche Marketing USA, LLC. Later, Mr. Wede filed suit in the Fortieth Judicial District Court for St. John the Baptist Parish to make the judgment executory in Louisiana. On December 8, 2005, the district court entered its judgment, and the North Carolina court judgment was made executory.
 

 In St. John the Baptist Parish, the clerk of court is also the recorder of conveyances and of mortgages.
 
 [2]
 
 The clerk’s office has a longstanding policy that, absent contrary instruction from the judgment creditor, all money judgments rendered by the district court are taken to the clerk’s “recordation department” to be entered into the parish mortgage records.
 

 Following that policy, on December 8, 2005, a deputy clerk received Mr. Wede’s judgment from the district court, made a certified copy of the judgment, and delivered the copy to the recordation department. The recordation department of the clerk’s office no longer maintains physical books for recording mortgage and conveyance documents; the records are now kept electronically. During the relevant time period, the records were kept electronically. To record a document electronically, personnel assign and place an instrument number upon the physical document, and scan it. Then personnel select within the office’s computer system | ^between the options of “MO” for designating the scanned image as a mortgage document and “CO” for designating the image as a conveyance document.
 

 When Mr. Wede’s judgment against Mr. Whitney was processed, however, instead of selecting “MO” on the computer screen, the clerk’s office identified the judgment by “CO” as a conveyance document.
 

 The computer system is the sole portal for accessing immovable property records in the parish. Prior to adopting this computer system, clerk’s personnel would create an index for each set of conveyance and mortgage records. Now, indices can be created based upon how documents are identified within the computer system (as “MO” or “CO”).
 
 [3]
 
 A clerk’s office employee testified that it was possible to run a search of the computer records that would retrieve both mortgage and conveyance records, but it was also possible to run a search that was confined to retrieve only mortgage records. If the search was confined to mortgage records, as a result of being erroneously identified by “CO” within the system, Mr. Wede’s judgment against Mr. Whitney would not be revealed to a computer system user.
 

 
 *62
 
 On December 8, 2005, at the time Mr. Wede’s judgment was processed by the clerk’s office, the judgment debtor, Mr. Whitney, and his wife owned immovable property upon which was located a home in St. John the Baptist Parish. The Whit-neys later sold this property to Robei't and Deborah James on January 31, 2007. No provision was made for satisfying Mr. Whitney’s indebtedness to Mr. Wede when the act of sale was executed. The act of sale between the Whitneys and Jameses was recorded in the parish records as a conveyance document on February 2, 2007.
 

 |4Later, an attorney for Mr. Wede sought to enforce the judgment against Mr. Whitney, but the attorney then learned the Whitneys had sold the property to the Jameses. It was also then learned by Mr. Wede’s attorney that Mr. Wede’s judgment had been identified as a conveyance document, rather than a mortgage document, in the computer recordation system.
 

 On May 3, 2007, another attorney, Lloyd LeBlanc, approached the chief deputy clerk in charge of the recordation department, and inquired about the recordation of Mr. Wede’s judgment and its apparent designation as a conveyance record.
 
 [4]
 
 After reviewing the matter, the chief deputy clerk, on that same day, accessed the computer recordation system and selected “MO” as the system’s designation for Mr. Wede’s money judgment. The judgment itself was not re-scanned, and no new instrument number was created for the judgment.
 

 Asserting that a judicial mortgage existed notwithstanding the original, mistaken designation of the judgment as a convey-anee record, Mr. Wede sought enforcement. In the district court, Mr. Wede filed a motion asking for authority to seize the property the Jameses had bought from the Whitneys. Mr. Wede filed his motion naming the Jameses as “defendants-in-rule.” The Jameses appeared and opposed the motion.
 

 The trial court granted Mr. Wede’s motion, and in well-written reasons, found that the error of the clerk’s office (selecting “CO” instead of “MO” in the computer system) was one of indexing. While noting that the Jameses are entitled to rely upon the public records, the trial court pointed out that the indices are not part of the public |srecord, and ruled that erroneous indexing does not affect the validity of recordation. According to the trial court’s ruling, Mr. Wede could proceed with seizure of the property from the Jameses.
 

 The Jameses appealed, and the court of appeal reversed. The appellate court disagreed that the error by the clerk’s office was one of indexing. The appellate court reasoned that the recorder had erroneously placed Mr. Wede’s judgment into the conveyance records, and the money judgment could not therefore be enforced as a mortgage.
 

 Mr. Wede applied to this court for a writ of review, and this court decided to consider the matter.
 
 See Wede v. Niche Marketing USA, LLC,
 
 2010-0243 (La.4/16/10), 31 So.3d 1069.
 

 LAW AND ANALYSIS
 

 In the record before us, there is no evidence that the judgment creditor, Mr. Wede, requested his money judgment be
 
 *63
 
 designated as a conveyance record instead of as a mortgage record. The record in this case is clear that the clerk of court’s office assumed the responsibility of recording the judgment. The record also establishes the copy of the judgment received by counsel for Mr. Wede did not indicate where in the clerk’s records the judgment was recorded; the document only indicated a sequential instrument number. Likewise, there is unrefuted testimony that the third-party purchasers, the Jameses — or anyone else who might have reviewed the St. John the Baptist Parish computerized recordation system at the time the James-es purchased the property from the Whit-neys-would have seen no evidence of Mr. Wede’s judgment when checking the parish mortgage records.
 
 [5]
 

 1 (/This case, therefore, presents the vexing question of whether the judgment creditor or the third-party purchaser should prevail when both invoke the protections of the public records and both appear to have satisfied the requirements for protection.
 
 [6]
 

 Deciding how to resolve this matter is made difficult because both the judgment creditor and the purchasers point to the same event, i.e., an admitted mistake by the recorder/clerk, as a reason for their protection. While both parties may be victims of a mistake,
 
 [7]
 
 and both have presented cogent arguments, in our view the law of recordation inherently favors the third-party purchaser over the creditor based on the facts of this case.
 

 
 *64
 
 |7In reviewing the law of recordation, civilian methodology and the civil code instruct that the sources of law are legislation and custom, and that legislation is the superior source of law.
 
 See
 
 LSA-C.C. arts. 1, 3. Legislation, which is defined as the solemn expression of legislative will, LSA-C.C. art. 2, is to be interpreted according to the rules set forth in the civil code.
 
 See
 
 LSA-C.C. arts. 9-13. Chief among those rules is the admonition in LSA-C.C. art. 9 that “[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.” Additionally, LSA-C.C. art. 11 instructs that “[t]he words of a law must be given their generally prevailing meaning.” Further, LSA-C.C. art. 13 provides: “Laws on the same subject matter must be interpreted in reference to each other.” Reading the various codal provisions involved and giving effect to each is the key to resolving this matter.
 

 We begin, therefore, with the words of the codal provisions.
 
 See Dumas v. State, Department of Culture, Recreation & Tourism,
 
 2002-0563, p. 11 (La.10/15/02), 828 So.2d 530, 536. In this action to enforce a judicial mortgage, it is worthy to recall that LSA-C.C. art. 3299 describes the effect of a judicial mortgage: “A judicial mortgage secures a judgment for the payment of money.” Turning next to LSA-C.C. art. 3300, which provides that “[a] judicial mortgage is created by filing a judgment with the recorder of mortgages,” it is implicit in this article that a judicial mortgage owes its very existence to being in the mortgage records. Similarly, from this same article it follows that if a party must present a judgment
 
 [8]
 
 to the recorder of |smortgages for the creation of a mortgage, then the judgment must be within the mortgage records else third parties are unaffected by it.
 

 Preferring a literal view of the law, however, we do not have to rely upon these obvious inferences from Article 3300 to ascertain how a judicial mortgage might affect the rights of third parties. That article does not directly address the rights of third parties, but LSA-C.C. art. 3338 does:
 

 Art. 3338. Instruments creating real rights in immovables; recordation required to affect third persons
 

 The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:
 

 (1) An instrument that transfers an immovable or establishes a real right in or over an immovable.
 

 (2) The lease of an immovable.
 

 (3) An option or right of first refusal, or a contract to buy, sell, or lease an immovable or to establish a real right in or over an immovable.
 

 (4) An instrument that modifies, terminates, or transfers the rights created or evidenced by the instruments described in Subparagraphs (1) through (3) of this Article.
 

 Clearly, a judicial mortgage is an “instrument that ... establishes a real right in or over an immovable.” LSA-C.C. art. 3338. Notwithstanding that this article is directed to the rights of third parties, Mr. Wede, the judgment creditor, argues that another article, LSA-C.C. art. 3347, is
 
 *65
 
 more specifically on point. Article 3847 provides:
 

 Art. 3347. Effect of recordation arises upon filing
 

 The effect of recordation arises when an instrument is filed with the recorder and is unaffected by subsequent errors or omissions of the recorder. An instrument is filed with a recorder when he accepts it for recordation in his office.
 

 RThe crux of the judgment creditor’s argument is that because the clerk’s office admittedly made an error in selecting “CO” instead of “MO” when processing his judgment, that LSA-C.C. art. 3347 nevertheless gives him a judicial mortgage enforceable against the Jameses.
 

 However, this argument figuratively puts the cart before the horse. Twice, Article 3347 speaks to “when” a document gains the effect of recordation. Not at all, however, does Article 3347 speak to the threshold matter of “where” a document must be recorded to gain that effect.
 
 [9]
 
 But Article 3338, which is addressed to the rights of third parties — the ultimate issue in this case — specifies “where” a document must be recorded to gain effect as to third parties. Specifically, Article 3338 provides a document must be recorded “in the appropriate mortgage or conveyance records,” or the instrument is “without effect as to a third person.”
 

 In Article 3338, therefore, there is an emphatic, clear, and absolute imperative that a judicial mortgage is “without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage ... records.” To adopt the judgment creditor’s argument that Article 3347 trumps Article 3338 would require this court to interpret Article 3347 to mean that the clerk of court’s acceptance of the judgment conferred, not just the effects of recordation, but also “the effect of recordation
 
 within the mortgage records.”
 
 The civilian tradition requires this court |into avoid adding the underlined words, or any other words not enacted by the legislature, into Article 3347.
 
 See
 
 LSA-C.C. art. 9.
 
 [10]
 

 
 *66
 
 Though we find that giving effect to the plain language of Article 3338 resolves the unusual matter before us, our interpretation is supported by other legislative pronouncements. Article 3338 is part of a larger legislative reworking of the law of registry by 2005 La. Acts, No. 169, § 1. Numerous provisions of the civil code and the revised statutes were thereby consolidated.
 
 [11]
 
 The legislature did not, however, change paragraph C of LSA-C.C. art. 3320: “Recordation has only the |ueffect given it by legislation.” The revision comments from the year 1992, when paragraph C of Article 3320 was enacted, speak to the situation at hand and its resolution:
 

 Paragraph C of this Article restates three well-established principles. The first is that recordation is only given such effect as the law provides. Louisiana’s registry system is not based upon knowledge, actual or implied. A document recorded in the mortgage records has effect as to third persons not because they have or are deemed to have notice of it, but merely because the law provides it has such effect. Conversely, an unrecorded instrument that is required to be recorded has no effect as to third persons, whether or not they are aware of its existence. See Art. 3308. Under that system, to be effective, an instrument also must be filed in the place prescribed by law. Thus, a mortgage recorded in the conveyance records, or a sale recorded in the mortgage records, is without effect as to third persons. ... [Emphasis added.]
 

 Thus, because the legislature left intact Article 3320 and the principles espoused in these revision comments when recently revising the law of recordation, we are bound to continue to recognize these principles.
 
 Cf.
 
 LSA-C.C. art. 8 (“Laws are repealed, either entirely or partially, by other laws. A repeal may be express or implied. It is express when it is literally declared by a subsequent law. It is implied when the new law contains provisions that are contrary to, or irreconcilable with, those of the former law....”).
 

 The judgment creditor also argues that the jurisprudence counsels for enforcing a
 
 *67
 
 judicial mortgage under the circumstances where the recorder intended to process the judgment as a mortgage document, but instead processed it as a conveyance document. This argument, however, fares no better than his reliance upon Article 3347 because the jurisprudence cited has no direct applicability to the unique situation at hand.
 

 For example, the judgment creditor first relies upon
 
 Kinnebrew v. Tri-Con Production Corp.,
 
 244 La. 879, 884, 154 So.2d 433 (1963). But
 
 Kinnebrew
 
 | i2involved only a question of when, not of where, recordation had occurred: “the only legal issue properly before the Court of Appeal (and now before us) was whether the actual inscription of ... encumbrances became effective from the time of the filing with the Clerk of Court.”
 
 Id.
 
 at 435. As noted earlier in our analysis of Articles 3338 and 3347, the present case does not turn upon a question of timing, so much as it turns upon where a judgment was recorded. In this matter, Article 3338 clearly indicates the judgment has no efficacy unless it is in the mortgage records. Mr. Wede’s reliance upon
 
 Kinnebrew
 
 is misplaced.
 

 Of the other authorities cited, only one case arguably examines “where” a document should be recorded in order to have effect against third parties. The judgment creditor cites — without elaboration — the ancient case of
 
 Lewis v. Klotz,
 
 39 La.Ann. 259, 268, 1 So. 539, 542 (1887), in which this court stated:
 

 The contract of lease was duly deposited in the recorder’s office, and the required indorsement to that effect was made upon it. It was recorded in the book kept by the officer for the recording of leases. Whether it should have been recorded in the book of conveyances it is unnecessary to consider, since the deposit in the proper office, and the proper indorsement by the officer, fully protected the parties.
 

 It appears that in
 
 Lewis
 
 this court analyzed a practice of redundant recordation, and gave effect when a lease document was recorded in only one place (a book specifically for leases) though a third party would expect to also find the lease in a conveyance book. But in the 123 years since this court decided
 
 Lewis,
 
 obviously much in the law of recordation has changed
 
 (e.g.,
 
 Book III, Title XXII-A of the current civil code makes no provision for a lease book). Also,
 
 Lewis
 
 does not concern recordation of a judgment, and whether a judgment should be given effect as a judicial mortgage. For these reasons, we find that
 
 Lewis
 
 is so different from the case at hand as to be of no assistance in its resolution.
 

 11sThus, we return to the plain language of Article 3338. In the words of that article, Mr. Wede’s money judgment is purportedly “[a]n instrument that modifies, terminates, or transfers the rights created or evidenced by the instruments” that “establishes a real right in or over an immovable.” LSA-C.C. art. 3338(4) and (1). Of course, as a money judgment, on its face it said nothing about establishing or transferring any real rights in Mr. Whitney’s immovable property.
 
 [12]
 
 The money judgment could not be transformed into a document affecting real rights as to third parties “unless the instrument [was] registered by recording it in the appropriate mortgage ... records.” LSA-C.C. art. 3338.
 

 CONCLUSION
 

 We find that owing to its entry in the parish’s computer recordation system as “CO” for conveyance rather than “MO” for mortgage, Mr. Wede’s judgment could not operate as a judicial mortgage against the
 
 *68
 
 Jameses. We note that the parties and the courts below have labored at great length to establish whether the mistaken entry of “CO” rather than “MO” was one of indexing or of recordation itself.
 
 [13]
 
 The trial court’s written opinion is particularly commendable for its efforts in grappling with |,4this issue. In our view, however, focus upon the recorder’s own intent and understanding has become a metaphysical debate too speculative to be of value.
 

 On the particular facts before us, the designation of the money judgment with “CO” as a conveyance document and the unrefuted testimony that a user of the parish computer system who searched only for mortgages would not find the judgment, are sufficient reasons for us to determine that the judgment was not “registered by recording it in the appropriate mortgage ... records” for purposes of Article 3338. The Jameses purchased the property in question from the Whitneys unencumbered by a judicial mortgage.
 

 The judgment of the court of appeal is hereby affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Retired Judge Philip C. Ciaccio, assigned as Justice
 
 ad hoc,
 
 sitting for Chief Justice Catherine D. Kimball.
 

 [2]
 

 . "The clerk of court as the parish recorder shall keep a book of conveyances, a book of mortgages, and other recordation books as provided by law. He shall keep indexes as required by law.” LSA-R.S. 44:185.
 

 [3]
 

 . Testimony indicates that twice a year, a printed index of mortgage and conveyance records is made and bound for persons who do not wish to use the computer system. However, the index is generated by the computer system, and not by any separate process. The computer system is, therefore, the only system for organizing the documents and the only portal for accessing the records.
 

 [4]
 

 . According to the Jameses’ brief, Mr. Le-Blanc represents or otherwise performs work for a title company. According to Exhibit E and corresponding text of the Jameses' Memorandum of Opposition submitted in the trial court, the title company Mr. LeBlanc represents or otherwise performs work for is the same title company that handled the closing for the sale from the Whitneys to the Jameses.
 

 [5]
 

 . According to the testimony of a chief deputy clerk, after the incorrect designation was pointed out to her office, she went back to the computer system and changed the designation of Mr. Wede's judgment from "CO” to "MO.” This change was made because "if someone only ran the name in the Mortgage records, they could find it [the judgment].”
 

 [6]
 

 . Louisiana's public records doctrine includes the use of a "race to the courthouse” system of recordation: "Instruments take effect as to third persons in the order in which the instruments are filed.” 1 Peter S. Title, Louisiana Real Estate Transactions § 8:16 (2d ed.2Q08). The public records doctrine "does not create rights in the positive sense, but rather has the negative effect of denying the effectiveness of certain rights unless they are recorded.”
 
 Id.
 
 A well-established consequence of these two principles is illustrated in
 
 McDuffie v. Walker,
 
 125 La. 152, 51 So. 100, 105-106 (1909), in which this court ruled that an unrecorded contract affecting immovable property has no effect as to third persons, even when a third person has actual knowledge of that unrecorded contract.
 

 [7]
 

 . The chief deputy clerk testified as follows regarding the mistake:
 

 Q. How then is it determined how these particulars [sic] documents are to be recorded?
 

 A. It's just known that judgments go in the Mortgage records; anything dealing with money we put in Mortgage.
 

 Q. Now, based on your research into this particular judgment, do you know what happened to this judgment when it was handed to die Mortgage Office on December 8, '05?
 

 A. When it was recorded, it will look the same way. When it was indexed, the way the computer works, you have to click on "MO” or "CO” and then you index it. And whoever indexed it, they didn’t click on "MO”, it stayed as a “CO”, but they indexed it as if it was a mortgage. But it didn't say that in the computer. ...
 

 Q. You're looking at a book. I'm going to ask you if you can tell me what that book is.
 

 A. This is the book that we keep the notations in and, if we have any type of errors or anything that needs to be changed, we write it in the book also.
 

 Q. And did you make that notation when Mr. Leblanc talked to you about it [the judgment]?
 

 A. Yes, I did.
 

 It should be noted that this court expresses no view as to the legal consequences of this testimony or of any other testimony in this case beyond the narrow legal issue before us.
 

 [8]
 

 . In this case, the judgment of a North Carolina court was made executory pursuant to LSA-C.C. art. 3305 (judgments of other jurisdictions).
 

 [9]
 

 . The absence of language in Article 3347 regarding "where” a document must be filed to gain effect is dispositive, but reading Article 3347
 
 in pari materia
 
 with other provisions in the civil code lends further support for our interpretation. According to the previous article, LSA-C.C. art. 3346(A), "An instrument creating, establishing, or relating to a mortgage or privilege over an immovable is recorded in the mortgage records of the parish in which the immovable is located. All other instruments are recorded in the conveyance records of that parish.” The specific mention in Article 3346 of the place of recordation persuades us that the absence of such a mention in Article 3347 means that Article 3347 is directed to "when” not “where.” And because Article 3347 twice mentions "when,” and the next three consecutive articles (LSA-C.C. arts. 3348, 3349, and 3350) are all addressed to timing, and two of these articles (LSA-C.C. arts. 3349 and 3350) actually deal with resolving mistakes or ambiguities in timing, we are further persuaded that the "errors or omissions of the recorder” described in Article 3347 refer to errors of timing, not of place.
 

 [10]
 

 . Because we refrain from interpreting "[t]he effect of recordation” to mean "[t]he effect of recordation in the mortgage records,” it is unnecessary for us here to opine on what might be included within the complete spectrum of "subsequent errors or omissions of the recorder” mentioned later in Article 3347. But to hold that placing an instrument outside of the mortgage records and into the conveyance records is an error or omission contemplated by Article 3347 would place Article 3347 into conflict with the clear, absolute imperative for the effectiveness of a judicial mortgage that we have observed in Article 3338. Our prior jurisprudence counsels against interpreting statutes to be in conflict, and prefers reconciling statutes instead.
 
 See Pumphrey v. City of New Orleans,
 
 05-979, p. 10-12 (La.4/4/06), 925 So.2d 1202, 1209-10. We find Article 3347 and Article 3338
 
 *66
 
 easily reconcilable from the meanings we have discerned each to have here.
 
 See
 
 LSA-C.C. art. 13.
 

 [11]
 

 . In consolidating the law, the legislature provided transitional guidance:
 

 Nothing in this Act shall be deemed to diminish the effect of, or render ineffective, the recordation of any instrument that was filed, registered, or recorded in the conveyance or mortgage records of any parish before the effective date of this Act. Any instrument that is filed, registered, or recorded before the effective date of this Act, that is not given the effect of recordation by virtue of existing law, shall be given such effect on the effective date of this Act that it would have if it were first filed on that effective date....
 

 Section 9 of 2005 La. Acts, No. 169, effective July 1, 2006.
 

 We observe within this transitional language that if an instrument were effective under the former law of registry, the current law does not adversely impact its effectiveness.
 

 In the instant case, the parties argued the merits of their positions under current law. The trial court and court of appeal adjudicated the parties’ dispute under current law. We have likewise applied current law, being neither urged nor finding otherwise a reason to apply pre-revision law. See, e.g.,
 
 Estate of Patrick v. Board of Sup’rs, Louisiana State University,
 
 2002-2570, 836 So.2d 1 (La.11/22/02) (declining to reach issue not raised "in a timely and proper manner.”). In our view, however, we discern no difference in the result, whether current or pre-revision law is applied.
 
 See
 
 LSA-C.C. art. 3320, revision comment (d) ("a mortgage recorded in the conveyance records, or a sale recorded in the mortgage records, is without effect as to third persons."). As discussed further in the body of this opinion, the quoted comment was made concurrently with revisions to the law of registry in the year 1992, a time well before the relevant events in this case.
 

 [12]
 

 .
 
 Cf.
 
 LSA-C.C. art. 3307 (describing the ef-feet and rank of mortgages).
 

 [13]
 

 . The clerk is statutorily required to maintain two records, one for mortgages and the other for conveyances. See LSA-R.S. 44:185 ("The clerk of court as the parish recorder shall keep a book of conveyances, a book of mortgages, and other recordation books as provided by law. He shall keep indexes as required by law.”).
 

 The clerk’s computer recordation system, by using the designations “MO” for "mortgage” and “CO" for "conveyance” appears to have been designed to comply with LSA-R.S. 44:185 and with numerous other statutes designating whether an instrument must be recorded in mortgage records, in conveyance records, or in both.
 
 See, e.g.,
 
 LSA-R.S. 3:210(B) (agricultural credit corporations may “execute mortgages of realty” which must be "recorded in the recorder’s office of the parish in which the mortgaged property is located, in the mortgage records”); LSA-C.C. art. 467 ("The owner of an immovable may declare that machinery, appliances, and equipment owned by him and placed on the immovable, other than his private residence, for its service and improvement are deemed to be its component parts. The declaration shall be filed for registry in the conveyance records of the parish in which the immovable is located.”); and LSA-C.C. art. 357 ("If the prayer for continuing or permanent tutorship be granted, the decree shall be recorded in the conveyance and mortgage records of the parish of the minor’s domicile, and of any future domicile, and in such other parishes as may be deemed expedient.”).