## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**20-533**

**TSS PROPERTIES, LLC**

**VERSUS**

**RAY-BAYOU, LLC AND**

**M&G PROPERTY HOLDINGS, LLC**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20176729
HONORABLE KRISTIAN EARLES, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John E. Conery, Van H. Kyzar, and Sharon Darville Wilson, Judges.

**Conery, J., concurs in the result.**

**AFFIRMED.**

Theodore G. Edwards, IV
James H. Domengeaux, Jr.
Davidson, Meaux, Sonnier, McElligott, Fontenot, Gideon & Edwards
810 South Buchanan Street
Lafayette, LA 70501
(337) 237-1660
COUNSEL FOR DEFENDANT/APPELLANT:
 M&G Property Holdings, LLC

James M. Garner
Elwood F. Cahill, Jr.
John T. Balhoff, II
Tyler M. DeAgano
Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC
909 Poydras Street, 28th Floor
New Orleans, LA 70112
(504) 299-2100
COUNSEL FOR PLAINTIFF/APPELLEE:
 TSS Properties, LLC

Sean M. Stockstill
R.J. Fonseca, Jr.
Standard Law, LLC
921 Kaliste Saloom Road
Lafayette, LA 70508
(337) 349-3867
COUNSEL FOR PLAINTIFF/APPELLEE:
 TSS Properties, LLC

Alan K. Breaud
Breaud & Meyers
P. O. Box 51365
Lafayette, LA 70505
(337) 266-2200
COUNSEL FOR DEFENDANT/APPELLEE:
 Ray-Bayou, LLC

**KYZAR, Judge.**

M&G Property Holdings, LLC appeals the granting of summary judgment in favor of TSS Properties, LLC declaring a servitude to be null, void, and of no effect. For the reasons set forth below, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

TSS Properties, LLC (TSS) filed this suit against Defendants, Ray-Bayou, LLC (Ray-Bayou) and M&G Property Holdings, LLC (M&G), to declare a servitude granted by Ray-Bayou in favor of the adjacent property owner M&G, null, void, and of no effect as to TSS as the subsequent purchaser of Ray-Bayou's property. The material facts are relatively simple and, in large part, undisputed.

Ray-Bayou purportedly granted a servitude of passage and use to M&G, the owner of adjacent property on Johnston Street in Lafayette, Louisiana, to allow M&G access through Ray-Bayou's property while building a shopping center and for cross parking once finished. The servitude was purported to have been granted by written document between Ray-Bayou and M&G on January 6, 2017, but not recorded in the conveyance records with the Lafayette Parish Clerk of Court until September 8, 2017. Also on September 8, 2017, Ray-Bayou sold its property to TSS, though that deed was not recorded until September 12, 2017.

TSS moved for summary judgment on its declaratory judgment action. It claimed that any servitude that may have been granted is invalid as it contains a faulty property description and, alternatively, that it was not recorded until after the bill of sale from Ray-Bayou to TSS was signed. Ray-Bayou and M&G opposed the motion but did not file reciprocal adverse motions for summary judgment. The trial court granted the motion, declaring the servitude void and of no effect as to TSS. At issue on appeal is the propriety of the issuance of the summary judgment declaring the servitude to be invalid and of no effect as to TSS.

## DISCUSSION

"A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant[]" and "is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law[.]" *Maggio v. Parker*, 17-1112, p. 4 (La. 6/27/18), 250 So.3d 874, 878. Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La.Code Civ.P. art. 966(A)(2). The law further provides that summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

*The Recordation Issue*

The trial court granted summary judgment in this case determining in part that the act of sale from Ray-Bayou to TSS was perfected prior to the recordation of the purported servitude agreement and, thus, the servitude agreement was of no effect as to TSS. Specifically, the servitude did not burden TSS's property. We disagree with this rationale.

This issue turns on the application and interpretation of the Louisiana public records doctrine as set forth in our law. Louisiana Civil Code Article 3338 provides that the rights and obligations established or created by an instrument that transfers an immovable or establishes a real right in or over an immovable are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records. Further, "[t]he effect of recordation

2

arises when an instrument is filed with the recorder and is unaffected by subsequent errors or omissions of the recorder. An instrument is filed with a recorder when he accepts it for recordation in his office." La.Civ.Code art. 3347. This Article speaks to "when" a document gains the effect of recordation not once, but twice, thus stressing its importance.

> The public records doctrine has been described as a negative doctrine because it does not create rights, but, rather, denies the effect of certain rights unless they are recorded. Title, *supra* at § 8.16; *Camel* [*v. Waller*], 526 So.2d [1086, 1089-90 (La.1988)]; *Phillips v. Parker*, 483 So.2d 972, 975 (La.1986). In explaining the negative nature of the doctrine, this Court has stated that third persons are not allowed to rely on what is contained in the public records, but can rely on the absence from the public records of those interests that are required to be recorded. *Camel*, 526 So.2d at 1090 [citing Redmann, *The Louisiana Law of Recordation: Some Principles and Some Problems*, 39 Tul. L.Rev. 491 (1965)]. The primary focus of the public records doctrine is the protection of third persons against unrecorded interests. *Camel*, 526 So.2d at 1090; *Phillips*, 483 So.2d at 976.

*Cimarex Energy Co. v. Mauboules*, 09-1170, pp. 19-20 (La. 4/9/10), 40 So.3d 931, 944.

> Louisiana's public records doctrine includes the use of a "race to the courthouse" system of recordation: "Instruments take effect as to third persons in the order in which the instruments are filed." 1 PETER S. TITLE, LOUISIANA REAL ESTATE TRANSACTIONS § 8:16 (2d ed.2008). The public records doctrine "does not create rights in the positive sense, but rather has the negative effect of denying the effectiveness of certain rights unless they are recorded." *Id.* A well-established consequence of these two principles is illustrated in *McDuffie v. Walker*, 125 La. 152, 51 So. 100, 105-106 (1909), in which this court ruled that an unrecorded contract affecting immovable property has no effect as to third persons, even when a third person has actual knowledge of that unrecorded contract.

*Wede v. Niche Mktg. USA, LLC*, 10-243, p. 6 (La. 11/30/10), 52 So.3d 60, 63 n.6.

At the time of the filing and recordation of the purported right of servitude in favor of M&G, there was nothing recorded concerning the sale of the property from Ray-Bayou to TSS. Thus, M&G was able to rely on the absence of any record negating the effects of that instrument, if indeed it created any such rights. *McDuffie v. Walker*, 125 La. 152, 51 So. 100 (1909), stands for the proposition that an act of

3

sale is effective as to third parties from the date recorded, not the date of the sale. In this case, the sale from Ray-Bayou to TSS occurred several days prior to the recordation date. While the sale date was the same as the date the purported servitude was recorded, September 8, 2017, it is the recording dates that determine whether the property was affected by any such servitude. This is the only interpretation that can properly give effect to the public records doctrine as we have come to understand and to apply the same. Third parties are entitled to rely on the dates of recordation of particular acts. If indeed TSS had sold its property to another party, that party necessarily would have been affected by the purported servitude as per the public records doctrine, as it was recorded prior to the recordation of TSS's purchase of the property. The third party is not entitled to rely on the date of the sale of the property to TSS to claim the servitude has no effect. The date the act of sale was signed, September 8, 2017, is no more relevant than the fact that the purported servitude agreement was signed on January 6, 2017. The undisputed facts here are that the sale to TSS was recorded on September 12, 2017, and the purported servitude in favor of M&G was recorded on September 8, 2017. Thus, the servitude affects the property of TSS, if the recorded document actually created such rights.

TSS further asserts that the trial court made a factual finding in support of the judgment which was not based on any valid evidence before it on the motion for summary judgment. We find this issue moot given our reliance on the public records doctrine. If the deed had been recorded on the day it was executed, September 8, 2017, the same day the purported act of servitude in favor of M&G was recorded, we would look to the timing of the recordation, as "the effectiveness thereof dated or reverted to the day, hour and minute of the filing[.]" *Kinnebrew v. Tri-Con Prod. Corp.*, 244 La. 879, 894, 154 So.2d 433, 438 (1963). As the act of sale from Ray-Bayou to TSS was not recorded until September 12, 2017, the trial court erred in

4

granting summary judgment in favor of TSS, at least in part, on that basis. However, that does not end our inquiry.

*Description of the Property and the "Servitude Agreement"*

M&G next argues that the trial court erred in its conclusion that the January 6, 2017 Agreement between it and Ray-Bayou did not contain an adequate property description so as to put third parties, such as TSS, on notice of the purported servitude. It asserts that the Agreement listed the mailing address of Ray-Bayou, the grantor of the purported servitude, as 6413 Johnston Street, Lafayette, Louisiana, which was the same address as the property bought by TSS. Further, it asserts that affidavits filed on behalf of M&G and Ray-Bayou reflect that the principal of TSS, Jai Hwan An, knew of the alleged servitude agreement. M&G asserts that these facts are evidenced by Jai Hwan An in his deposition, the affidavits filed in opposition to the motion for summary judgment, and in the pleadings filed in the case.

Louisiana jurisprudence emphasizes that "no precise criteria can be established for distinguishing between descriptions which are sufficient to put third persons on notice and those which are not." *Wood v. Morvant*, 321 So.2d 914, 918 (La.App. 1 Cir. 1975). As a result, "each case of this nature must be decided in the light of its own peculiar facts and circumstances." *Id.*

The Agreement contains the following "Recitals" and references a separate "Servitude Agreement," dated the same date as the Agreement:

> A. M&G and Ray-Bayou have entered into a formal agreement dated January 6, 2017, for grant of servitude of access, passage and parking ("Servitude Agreement") on and across certain property owned by Ray-Bayou as shown on the shaded areas entitled "Right of Passage" on the attached Exhibit A.
>
> B. In said Servitude Agreement Ray-Bayou agreed to grant, under the terms and conditions of the Servitude Agreement, a perpetual, non-exclusive predial servitude for pedestrian and vehicular ingress and egress and parking on, across and over the Ray-Bayou Parcel as shown

5

on the shaded areas entitled "Right of Passage" on the attached Exhibit A, such servitude to run in favor of the M&G Parcel.

The Agreement was recorded by Ray-Bayou at 3:55:05 p.m. on September 8, 2017. The September 8, 2017 cash sale between Ray-Bayou and TSS was recorded by Ray-Bayou on September 12, 2017. Although the Agreement refers to a separate servitude agreement and states that the description of the property affected is shown in the "Right of Passage" attached as exhibit "A.," no such documents were attached to the Agreement or recorded in the Lafayette Parish Clerk of Court's conveyance records. Moreover, the Agreement contains no description of the property over which Ray-Bayou grants a servitude, nor is there a separate document containing a property description. Even reading the Agreement alongside or in conjunction with the cash sale from Ray-Bayou to TSS, one cannot glean from the public record that a servitude existed over the property sold to TSS.

Further, although the cash sale from Ray-Bayou to TSS includes a clause stating that the sale is subject to servitudes, the language specifically refers to "recorded" servitudes, as per the following language from the deed (emphasis added):

> This sale is made and accepted subject to the restrictive covenants, *easements, servitudes*, mineral royalties, oil, gas and mineral leases, *obligations of ownership*, etc. affecting the above described property *of record* in the Lafayette Parish Clerk of Court's Office.

Clearly, if any "Servitude Agreement" had been recorded in the records of the Lafayette Parish Clerk of Court before its purchase, TSS would have been burdened thereby. There were none so recorded as between Ray-Bayou and M&G, nor does the Agreement establish any servitude in and of itself over any particularly described property of Ray-Bayou. Thus, we cannot find that the Agreement adequately

6

establishes a servitude or provides a description of any property over which any servitude was established so as to put TSS on notice thereof.

Under somewhat similar factual circumstance, in *Dallas v. Farrington*, 490 So.2d 265 (La.1986), the supreme court affirmed a decision by the court of appeal finding that a conventional servitude was never established where, in an agreement to purchase, the seller of a tract of land obligated himself as a condition of the sale to grant plaintiffs a servitude to use a particular drive for passage to their property. However, the actual grant of the servitude was omitted from the act of sale, which transferred the property, and was not otherwise recorded separately. The supreme court noted that knowledge of the existence of an obligation to grant a servitude without an actual recorded servitude is of no consequence under our law.

> Contracts affecting immovable property must be recorded in order to affect third parties. La.R.S. 9:2721 and 2756. The public records doctrine is essentially a negative doctrine declaring that what is not recorded is not effective except between the parties, and a third party in purchasing immovable property is entitled to rely on the *absence* from the public records of any unrecorded interest in the property such as a sale or a grant of a servitude. *Phillips v. Parker*, 483 So.2d 972 (La.1986). Because recordation is essential for effectiveness against third parties, actual knowledge by third parties of unrecorded interests is immaterial. *McDuffie v. Walker*, 125 La. 152, 51 So. 100 (La.1909); Redmann, The Louisiana Law of Recordation: Some Principles and Some Problems, 39 Tul.L.Rev. 491 (1965). *This principle of the law of registry applies here so that Farrington's son acquired the property free of any conventional servitude, irrespective of any actual knowledge that the father had obligated himself to grant a servitude, since actual knowledge outside the public records is immaterial.* A. Yiannopoulos, 4 Louisiana Civil Law Treatise - Predial Servitudes § 127 (1983).

*Id.* at 269-70 (footnote omitted) (emphasis added).

In this case, the Agreement specifically references a separate servitude agreement, yet there was no such separate agreement attached, nor its location in the property records referenced. Further, there was no property description whatsoever, even a defective one, referenced in the Agreement. While the document does include

7

a mailing address of Ray-Bayou as 6413 Johnston Street, Lafayette, Louisiana, which does correspond to the property purchased by TSS, it is not referenced in the agreement as the location of the servitude. If it had been, the outcome here may be different. However, given that it is apparent that Ray-Bayou is a commercial property owner, it was not readily apparent that the servitude, if one existed, affected the property at that particular address. Further, even the nature of any servitude was not precise, as there was no attached servitude agreement showing the location or extent of the servitude; it was simply a nebulous reference to some servitude on some property owned by Ray-Bayou. Accordingly, we conclude that the nature and extent of the servitude as well as the description of the property affected by any such servitude was not apparent from the Agreement so as to put third parties on notice that it affected this particular property. As such, the motion for summary judgment was properly granted in this case on this basis, unless the outcome is altered by the subsequent act of correction filed on behalf of Ray-Bayou and M&G.

*The Act of Correction*

On October 1, 2017 at 11:16:10 a.m., there was recorded a "Notarial Act of Correction" purporting to correct the Agreement by attaching a plat thereto showing the description of the property affected by the servitude and area of the servitude. This was by and between Ray-Bayou and M&G Holdings, LLC. It is to be noted that the deed from Ray-Bayou to M&G was originally to M&G Property Holdings, LLC, not M&G Holdings, LLC.

Louisiana Revised Statutes 35:2.1 provides that a clerical error in a notarial act affecting movable or immovable property or any other rights, corporeal or incorporeal, may be corrected by an act of correction executed by the person who was the notary or one of the notaries before whom the act was passed, or the notary who actually prepared the act containing the error, but with the proviso that it must

8

be passed before a notary and two witness, i.e., it must be an authentic act. Further, the statute provides that the act of correction executed in compliance with the section shall be given retroactive effect to the date of recordation of the original act. "However, the act of correction shall not prejudice the rights acquired by any third person before the act of correction is recorded where the third person reasonably relied on the original act." La.R.S. 35:2.1(B). Our jurisprudence is clear that an affidavit of correction is permissible only to correct "clerical errors" which do "not alter the true agreement and intent of the parties" and that it cannot effect any substantive change to the original document. *Cockerham v. Cockerham*, 12-1769, p. 13 (La.App. 1 Cir. 10/3/13), 201 So.3d 253, 262.

The act of correction was filed in October 2017, nearly a month after TSS acquired its property. Thus, given our conclusion above that the Agreement did not contain an adequate description of any servitude or of the properties involved so as to put third parties, such as TSS, on notice of the servitude, we find that summary judgment is proper. The act of correction could not have retroactive effect to the prejudice of rights acquired by TSS before the act of correction was recorded, as TSS was entitled to reasonably rely on the absence of any recorded servitude affecting the property it acquired. La.R.S. 35:2.1.

### DECREE

For the reasons set forth, we affirm the judgment of the trial court granting the motion for summary judgment in favor of TSS Properties, LLC. Costs of this appeal are assessed to M&G Property Holdings, LLC.

**AFFIRMED.**

9